IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2018 Session

**RALEIGH COMMONS, INC. v. SWH, LLC ET AL.**

**Appeal from the Circuit Court for Shelby County**
**No. CT-000052-06      Mary L. Wagner, Judge**

_____

**No. W2017-01792-COA-R3-CV**

_____

This action, which involves payment of a promissory note, was previously appealed to this Court and subsequently remanded to the trial court due to the existence of a genuine issue of material fact precluding summary judgment. Following remand, the trial court conducted a hearing regarding the disputed issue of the reasonableness of attorney's fees paid. Determining that the amount of fees paid was reasonable, the trial court entered judgment in favor of Dr. Joseph Weinstein, the note holder and the appellee herein. Dr. Stevan Himmelstein, one of the parties found to be liable on the note, has appealed. Discerning no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

John J. Heflin, III, and Kenneth P. Jones, Memphis, Tennessee, for the appellant, Stevan I. Himmelstein, M.D.

Dan M. Norwood, Memphis, Tennessee, for the appellee, Joseph Weinstein, M.D.

**OPINION**

This is the second appeal in this matter, which involves the obligation assumption of a promissory note by three physicians who were former business associates and members of a limited liability company. *See Raleigh Commons, Inc. v. SWH, LLC*, No. W2011-01298-COA-R3-CV, 2013 WL 3329016, at *1 (Tenn. Ct. App. June 28, 2013) ("*Raleigh I*"). In *Raleigh I*, this Court detailed the factual and procedural history of this case as follows:

Joseph Weinstein, M.D. ("Dr. Weinstein"), Stevan Himmelstein, M.D. ("Dr. Himmelstein"), and Whitney Slade, M.D. ("Dr. Slade") formed SWH, LLC ("SWH") for the purpose of purchasing and developing real property. In particular, the doctors were interested in constructing a medical office building and developing the surrounding property located at Raleigh Commons Boulevard in Memphis, Tennessee. At that time, the property was owned by American Way Builders, Inc. ("American Way") which purchased the property from Raleigh Commons, Inc. ("Raleigh Commons") by executing a Promissory Note (the "Note") in the principal amount of $1,264,559.00. In February 1998, in order to acquire the property, SWH and its individual members executed an Assumption and Modification Agreement assuming American Way's obligation to Raleigh Commons under the Note. Pursuant to the Assumption and Modification Agreement, SWH and its individual members each agreed to be jointly and severally liable to Raleigh Commons under the Note to the same extent and for all purposes as if they were original makers and borrowers of the Note. Each of the doctors signed the Assumption and Modification Agreement twice—once as a member of SWH and once in their individual capacities evidencing their personal liability.

Subsequently, Dr. Weinstein decided to give up his ownership in SWH. In exchange and in consideration for Dr. Weinstein's ownership interest, SWH and its individual members, including new members Sherman McGill ("Mr. McGill"), John Scott ("Mr. Scott"), and Thomas Tello ("Mr. Tello"), transferred certain portions of its property to RC Office, LLC ("RC Office"), a new entity formed and owned by Dr. Weinstein, Dr. Himmelstein, and Dr. Slade. The purpose of forming RC Office was to own and manage the medical office building and assume the debt related to it. This agreement was evidenced by the parties' execution of the Assignment and Agreement in November 1999. Pursuant to the Assignment and Agreement, SWH and its individual members agreed to indemnify and hold Dr. Weinstein harmless from any liability arising from SWH's operations, including but not limited to the Note. Further, SWH agreed to retain the remainder of the property and the debt related to its operations.

In October 2002, SWH and its individual members executed an Extension Agreement whereby the due date of the Note was extended to November 1, 2005. In November 2005, however, SWH and its individual members defaulted on their obligation to pay the Note. As a result, on

January 6, 2006, Raleigh Commons filed a complaint in the Circuit Court of Shelby County against SWH, Dr. Weinstein, Dr. Himmelstein, Dr. Slade, and Mr. McGill to collect the balance due under the Note. In response, Dr. Weinstein and Dr. Himmelstein filed answers containing general denials. Thereafter, on April 13, 2006, Dr. Weinstein filed a cross-complaint in which he argued that, to the extent he was liable for amounts owing under the Note, he was entitled to indemnification from Dr. Himmelstein, Dr. Slade, and Mr. McGill pursuant to the Indemnity Provisions in the Assignment and Agreement.

Subsequently, Raleigh Commons filed a motion for summary judgment against Dr. Weinstein for the outstanding liability on the Note. On September 28, 2006, instead of allowing a judgment to be entered against him, Dr. Weinstein opted to purchase the Note from Raleigh Commons for $304,218.00. This amount included the $236,000.00 principal balance remaining on the Promissory Note, accrued interest of $15,419.82, and attorney's fees totaling $52,798.38. Thereafter, Dr. Weinstein, now as holder of the Note, sought to collect from the remaining obligors.

On June 28, 2007, Dr. Weinstein filed his First Amended Cross-Claim in which he argued that Dr. Himmelstein, Dr. Slade, Mr. McGill, and SWH each assumed liability for the Note as makers and guarantors. Dr. Weinstein further argued that each was liable to him pursuant to the Indemnity Provisions contained in the Assignment and Agreement. Thereafter, on October 23, 2008, the trial court entered an order granting partial summary judgment in favor of Dr. Weinstein against Dr. Himmelstein in which it ruled that Dr. Weinstein had the right to enforce the Note as the holder, and that Dr. Himmelstein was jointly and severally liable on the Note. Subsequently, the trial court granted Dr. Weinstein's motions for default judgment and partial summary judgment against SWH and Dr. Slade regarding their liability under the Note.

On January 14, 2009, Dr. Himmelstein filed his Second Amended Answer to Dr. Weinstein's Cross-Claim, and filed Cross-Claims against Dr. Weinstein, Dr. Slade, Mr. McGill and SWH, and a Third-Party Complaint against RC Office. Specifically, Dr. Himmelstein asserted claims against Dr. Weinstein for an accounting, declaratory and injunctive relief, negligent and/or intentional misrepresentation, breach of contract, contribution and indemnity, breach of duty of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment arising out of alleged mismanagement of RC

Office. Following Dr. Weinstein's filing of several dispositive motions, the trial court entered orders dismissing Dr. Himmelstein's claims for unjust enrichment, breach of duty of good faith and fair dealing, and breach of fiduciary duty.

On May 15, 2009, in order to determine the amount owed to Dr. Weinstein under the Note, the trial court conducted a writ of inquiry, after which it concluded that Dr. Himmelstein, Dr. Slade, and SWH were jointly and severally liable to Dr. Weinstein for $319,544.00, comprised of the principal amount due on the Note, accrued interest, and an award of attorney's fees and costs associated with collection as provided for in the Note. On the same day, Dr. Weinstein filed an affidavit in support of his request for attorney's fees. Thereafter, on November 19, 2009, the trial court entered its Order Awarding Fees to Dr. Weinstein and Reserving Partial Collection in which it concluded:

> This cause came to be heard on Application of [Dr. Weinstein] for the award of attorney's fees by Dr. Joseph Weinstein, the Opposition to Application of Dr. Stevan Himmelstein, Affidavit of John Speer, Esq., in support of Dr. Weinstein's application for fees, argument of Counsel and the entire record in this cause, from all of which the Court finds as follows:
>
>> In consideration of the complexity and length of representation, the Court finds that the fees and expenses requested by the attorneys for Dr. Weinstein is reasonable and is hereby awarded.
>>
>> The attorneys for Dr. Joseph Weinstein are hereby authorized to collect only twenty percent of the total fee until the parties agree as to a percentage liability, or until the Court can conduct a full hearing on this matter to determine contribution liability of each party.

On November 30, 2009, Dr. Weinstein filed a motion for summary judgment as to all outstanding claims in which he was involved, and Dr. Himmelstein filed a motion for default judgment on his cross-claims against Dr. Slade, Mr. McGill, SWH, and RC Office. On January 15, 2010, the trial court entered the following orders: Order Granting Dr. Weinstein's

4

Motion to Dismiss Dr. Himmelstein's Claim for Unjust Enrichment, reasoning that such claim failed to state a claim upon which relief can be granted because of the existence of an express contract; Order Granting Dr. Weinstein's Motion to Dismiss Dr. Himmelstein's Claims for Breach of Duty of Good Faith and Fair Dealing, and for Breach of Fiduciary Duty, reasoning in part that the latter cause of action failed to state a claim upon which relief can be granted because Tenn. Code Ann. § 48-240-102 defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members. Thereafter, on January 22, 2010, the trial court entered an order granting Dr. Himmelstein's motion for default judgment on his cross-claims against Dr. Slade, Mr. McGill, SWH, and RC Office.

On March 3, 2011, the trial court entered its order granting summary judgment in favor of Dr. Weinstein as to all outstanding claims against him and directed entry of a final judgment.

*Raleigh I*, at *1-3 (footnotes omitted).

As explained by this Court in *Raleigh I*, the trial court's final order provided, *inter alia*, that the "indemnification provisions of the Assignment and Agreement specifically include the Promissory Note at issue." *See Raleigh I*, at *5. The trial court therefore determined that Dr. Weinstein's purchase of the Promissory Note ("Note") was not voluntary and that none of the affirmative defenses asserted by Dr. Himmelstein could bar or reduce Dr. Weinstein's recovery from Dr. Himmelstein and the other indemnitors. *See id.* The trial court concluded that Dr. Himmelstein and the other indemnitors were jointly and severally liable to Dr. Weinstein for his purchase of the Note. *See id.* at *6. In addition to awarding Dr. Weinstein the amount of money he expended on the purchase of the Note plus interest, the trial court also awarded his attorney's fees incurred. *See id.*

On appeal in *Raleigh I*, Dr. Himmelstein raised several issues for this Court's review, including whether the trial court erred in granting summary judgment to Dr. Weinstein on his indemnification claim, whether the trial court erred in awarding Dr. Weinstein's attorney's fees pursuant to the indemnity provisions in the Assignment and Agreement, and whether the trial court erred in the amount awarded to Dr. Weinstein. *See id.* at *8. After examining the indemnification provisions at issue, this Court concluded that the parties intended for Dr. Weinstein to be indemnified for "'any and all costs and expenses incurred in defending any and all said action, including reasonable attorneys fees and Court costs associated with, or in any manner arising out of any of the activities, enterprises or operations of SWH . . . .'" *See id.* at *11 (quoting Assignment and Agreement). This Court also affirmed the trial court's grant of summary judgment in

favor of Dr. Weinstein regarding Dr. Himmelstein's affirmative defenses and further agreed with the trial court's conclusion that Dr. Weinstein's purchase of the Note was not voluntary. *See id*. at *12-14.

With regard to indemnification, however, this Court concluded that there was a material dispute of fact concerning whether the amount of attorney's fees that Dr. Weinstein had paid to Raleigh Commons was reasonable. *See id*. at *16. Accordingly, this Court reversed the grant of summary judgment in favor of Dr. Weinstein on his indemnification claim. *See id*. This Court further reversed the trial court's award to Dr. Weinstein of attorney's fees and costs incurred in enforcing the indemnity provisions following his purchase of the Note. *See id*. at *18.

Upon remand from this Court, the trial court entered a "Pretrial Order" on July 22, 2016, wherein the court determined that the issue of the reasonableness of the amount paid by Dr. Weinstein concerning the Note was not limited to solely the amount of attorney's fees paid. The court also stated that the order was entered "in order to facilitate the resolution of this matter by another judge" due to the impending retirement of Judge Donna Fields.

Subsequently, on January 12, 2017, with Judge Mary L. Wagner now presiding over the matter, the trial court entered a "Revised Pretrial Order and Order Setting Trial." In this order, the trial court stated:

> This Revised PreTrial Order is entered following a status conference held December 1, 2016, after the appearance of Dan Norwood, Esq. as counsel for Cross-Plaintiff Joseph Weinstein, at which Mr. Norwood orally moved the Court to revisit the scope of the issues to be resolved on remand as addressed in the Pretrial Order entered July 22, 2016. The Court has reviewed the Opinion of the Tennessee Court of Appeals dated June 28, 2013 and all filings relating to the entry of the said Pretrial Order, and heard arguments by counsel on January 5, 2017, from all of which the Court is of the opinion that the issue remanded for determination by this Court as to the reasonableness of the amount paid by Dr. Weinstein for the promissory note at issue is limited to the amount of attorneys' fees paid in connection with that purchase.
>
> IT IS THEREFORE ORDERED that the issue remanded for determination by this Court as to the reasonableness of the amount paid by Dr. Weinstein for the promissory note at issue is limited to the amount of attorneys' fees paid in connection with that purchase. The Pretrial Order entered July 22, 2016 is superseded by this Order.

The trial court subsequently conducted a hearing regarding this issue on March 8, 2017. Dr. Weinstein was the first witness, and he testified that following his departure from SWH, LLC ("SWH"), he began receiving letters from Raleigh Commons concerning nonpayment of the Note. Dr. Weinstein related that he was eventually sued by Raleigh Commons because of his obligation under the Note. According to Dr. Weinstein, following his consultation with attorneys concerning the lawsuit, he believed that summary judgment could be entered against him for the amount owed on the Note unless he paid such amount in full. Dr. Weinstein also reported that he retained attorneys to answer Raleigh Commons' complaint on his behalf and file claims against the indemnitors pursuant to the contractual indemnity provisions.

Dr. Weinstein explained that the amount due under the Note included attorney's fees charged by Mr. Douglass, Raleigh Commons' counsel, for his collection efforts on behalf of Raleigh Commons. Dr. Weinstein related that because he thought the initial fee amount claimed was "high," he sought to have the fee lowered. Dr. Weinstein further stated that because he learned by discussions with legal counsel that a contingency fee was standard for collection efforts, he paid the fee after it was voluntarily reduced by Mr. Douglass. Dr. Weinstein reiterated that he paid the amount due under the Note, including the reduced contingency fee, in order to avoid a judgment that would negatively affect his credit score. Dr. Weinstein further explained that although he attempted to obtain assistance from Drs. Slade and Himmelstein before paying off the Note, he was unable to secure their aid.

Dr. Weinstein acknowledged that earlier demands sent by Mr. Douglass to SWH members included a lower amount of attorney's fees. Dr. Weinstein also articulated that he had not contested liability regarding the Note because he had voluntarily signed the Note and therefore did not believe his position to be defensible. Dr. Weinstein admitted that he had not sought Mr. Douglass's records regarding time spent on the matter before paying. Dr. Weinstein further admitted that although he had previously characterized the fee amount as "ridiculous," he had been exaggerating. He explained that he had come to understand that a contingency fee was standard for collection matters and that he had relied on the advice of his counsel in tendering payment. Dr. Weinstein also stated that he considered the fee to be reasonable following Mr. Douglass's reduction of the amount sought.

Mr. Douglass was the next witness to testify. He related that he had been a practicing attorney for forty-two years. Mr. Douglass stated that when he agreed to file suit on behalf of Raleigh Commons, he asked for a one-third contingency fee. According to Mr. Douglass, he regularly handled debt collection litigation on a contingency fee basis because he bore the risk that the debt would not be collected. Mr. Douglass

reported that because he had taken the case on a contingency fee basis, he had not necessarily kept track of his time devoted to the matter. Regardless of this fact, Mr. Douglass estimated that he had spent at least 100 hours on the case.

Mr. Douglass testified that the pay-off amount for the Note was provided by Raleigh Commons, and he could not explain purported discrepancies in the pay-off calculation. He further testified that he ultimately agreed to reduce his fee to 21-22% of the balance in an effort to settle the matter. Mr. Douglass asserted that he never questioned the liability of the individuals who had executed the Note and that he believed that he could pursue collection of the full amount from any one of those individuals pursuant to the Note's language regarding joint and several liability.

Michael Wayne Mitchell, who had been a practicing attorney since 1988, testified that he represented Dr. Weinstein in the lawsuit filed by Raleigh Commons. Mr. Mitchell testified concerning the time he spent on the matter, stating that he had accrued fees due in the amount of $4,582.00. Mr. Mitchell also related that when he handled cases involving collection of a debt, he usually did so on a contingency fee basis.

John Morris Russell was the final witness called to testify. Mr. Russell indicated that he had been a practicing attorney since 1995. Mr. Russell stated that if he had been representing Dr. Weinstein, he would have challenged Mr. Douglass's fee and would have offered at the summary judgment hearing to have his client pay the amount due under the Note and submit for the judge's determination the issue of a reasonable fee. Mr. Russell testified that he also would have sought an itemized calculation regarding the pay-off amount. According to Mr. Russell, he had previously handled debt collection cases on a contingency fee basis and had, at times, collected a greater amount by contingency fee than the amount he would have collected based on his hourly rate and time expended. Mr. Russell further acknowledged that accepting representation on a contingency fee basis placed the risk of non-collection upon the attorney. Mr. Russell admitted that failing to settle the matter prior to the summary judgment hearing could have resulted in a recorded monetary judgment against Dr. Weinstein.

Following the conclusion of the proof, the trial court took the matter under advisement. On June 5, 2017, the trial court entered a final judgment, wherein the court stated:

> The Court finds from the testimony of these witnesses that the $52,798.38 paid by Dr. Weinstein as an attorney's fee to Mr. Douglass was reasonable for the following reasons: Tennessee has no mathematical rule for determining what a reasonable attorney fee is; the determination of what constitutes a reasonable fee is a discretionary decision based on the

8

evidence and the experience of the trier of fact; applying the factors specified in Rule 1.5 of the Rules of Professional Conduct, the Court finds that this was not a straightforward note collection case, but instead involved multiple parties, multiple documents including assumption and indemnification agreements, all as evidenced by the more than forty-five docket entries including numerous cross-claims and counterclaims by the time of the settlement occurred between Dr. Weinstein and Raleigh Commons, Inc.; although Mr. Douglass produced no time records or proof as to his regular hourly rate, his testimony that he spent approximately 100 hours on the case was uncontradicted; Mr. Douglass is a longtime member of the bar having practiced for 42 years and had a longstanding relationship with Raleigh Commons, Inc.; contingency fee arrangements including arrangements for a one-third fee are customary in collection cases and there was no testimony that a one-third contingency fee, or in this instance an approximately 22 percent attorney fee, is unreasonable; although Dr. Himmelstein argued that Dr. Weinstein should have allowed a judgment to be rendered against him and have the Court set the fee, the law is clear that Dr. Weinstein was not required to do so; Dr. Weinstein in fact was able to negotiate a reduction in the fee from $78,666.00 to $52,798.38; and although Dr. Himmelstein raised substantial issues regarding possible conflicts of interest between some of the attorneys and their clients, it was not Dr. Weinstein's responsibility to know or understand the limitations on counsels' representation. For all of these reasons, the Court awards Dr. Weinstein a total judgment on his indemnity claim in the amount of $304,218.00 which includes the full amount of the attorney fee of $52,798.38 paid by Dr. Weinstein at the time of his purchase of the promissory note from Raleigh Commons.

The Court further finds with respect to prejudgment interest, based on the original decision of Judge Fields on the issue of prejudgment interest, the decision of the Court of Appeals, the circumstances of this case including the funds Dr. Himmelstein has had on deposit with the Clerk of the Court since 2011, that prejudgment interest as to the claims against Dr. Himmelstein based both under the promissory note, and under the indemnity agreement, shall be calculated as follows: prejudgment interest for the period September 28, 2006 through December 19, 2011 shall be at the rate of ten percent (10%) simple interest per annum as previously decided by Judge Fields; but that from December 19, 2011 to the date of entry of this judgment, prejudgment interest shall be limited to the interest actually earned on the Two Hundred Seventy Eight Thousand Six Hundred Seventy-Nine Dollars and 59 cents ($278,679.59) that has been on deposit

9

by Dr. Himmelstein with the Court Clerk since 2011 pursuant to this Court's Orders.

Finally, the Court finds that the parties have consented to the dismissal of claims brought against additional parties, the final resolution of which has not been fully addressed in prior orders, so that this Order will reflect a final judgment as to all claims against all parties.

The trial court accordingly entered a judgment in Dr. Weinstein's favor against Dr. Himmelstein for liability under the Note in the amount of $238,088.19. The court included its calculations regarding said amount in a footnote to its order. The court further entered a judgment in Dr. Weinstein's favor against Dr. Himmelstein for liability pursuant to the indemnification provisions in the amount of $485,343.80, stating that this sum was "inclusive of the amount awarded under the Promissory Note, with Dr. Himmelstein bearing liability for the larger of the two judgments, but not both cumulatively." The court similarly included its calculations regarding this amount in a footnote to its order. Dr. Himmelstein timely appealed.

## II. Issues Presented

Dr. Himmelstein presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by limiting the issue on remand to a determination of whether the amount of attorney's fees paid to Raleigh Commons by Dr. Weinstein when he purchased the Note was reasonable, rather than a determination of the reasonableness of the entire amount of the indebtedness paid.

2. Whether the trial court erred by ruling that the amount of attorney's fees charged by Raleigh Commons' counsel was reasonable.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury proceeding is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *see also Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins.*

*Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)).  We review the trial court's conclusions of law *de novo* with no presumption of correctness.  *See Hughes v. Metro. Gov't of Nashville & Davidson Cty*, 340 S.W.3d 352, 360 (Tenn. 2011).

## IV.  Scope of Remand

Dr. Himmelstein asserts that the trial court erred in limiting its inquiry following remand from this Court to whether the amount of attorney's fees paid to Raleigh Commons by Dr. Weinstein when he purchased the Note was reasonable.  Dr. Himmelstein contends instead that the court should have considered whether the entire amount paid by Dr. Weinstein when he purchased the Note was reasonable.  Based on our thorough review of this Court's prior opinion in *Raleigh I*, we conclude that the trial court's determination of the scope of its inquiry following remand was proper.

This Court has previously explained as follows regarding the scope of a trial court's authority upon remand:

> The general rule regarding the scope of a trial court's authority upon remand is stated as follows in 5 Am. Jur. 2d Appellate Review § 791:
>
> > In general, a trial court must strictly comply with the appellate court's mandate, and on remand normally lacks the power to deviate from the terms of the mandate from the appellate court, absent permission from the appellate court, or extraordinary circumstances.  Thus, a trial court on remand generally lacks the power to enter any other judgment, or consider or determine any other issue, that is not included in the direction for entry of judgment made by an appellate court.  Furthermore, relief generally cannot be given on remand beyond the scope of the mandate.  Nor may the lower court review the mandate, even for apparent error.
> >
> > Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void.  (Footnotes omitted.)
>
> The limited authority of a trial court upon remand in Tennessee was recently restated as follows in *State v. Blackhurst*, [No. E2002-01249-CCA-R3-PC, 2003 WL 21920251, at *6 (Tenn. Crim. App. Aug. 12, 2003)]:
>
> > "The appellate court directs actions and dictates results

through its orders, judgments, and mandates" and may limit the scope of a remand. *State v. Williams*, 52 S.W.3d 109, 123 (Tenn. Crim. App. 2001); *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Cook v. McCullough*, 735 S.W.2d 464, 470 (Tenn. App. 1977). Such orders and mandates are controlling, and the lower court does not have "the authority to expand the directive or purpose of [the higher] court imposed upon remand." *State v. Weston*, 60 S.W.3d 57, 59 (Tenn. 2001); *Cook*, 735 S.W.2d at 470. Otherwise, "'[t]here would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision.'" *Irick*, 906 S.W.2d at 443, (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976)).

*Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481, at *3 (Tenn. Ct. App. Mar. 16, 2004).

In *Raleigh I*, this Court specifically stated as follows concerning its remand on the issue of Dr. Weinstein's indemnity claim:

After thoroughly examining the language of the Indemnity Provisions, it is abundantly clear that the intent of the parties was to indemnify Dr. Weinstein from any and all indebtedness, claims, demands, costs, expenses, damages, and liabilities associated with SWH. In fact, the Note at issue is explicitly identified as one of the liabilities of SWH for which Dr. Weinstein was entitled to indemnification. The parties further agreed that Dr. Weinstein's right to indemnity includes "the reimbursement of any and all costs and expenses incurred in defending any and all said action, including reasonable attorneys fees and Court costs associated with, or in any manner arising out of any of the activities, enterprises or operations of SWH . . . ." Moreover, SWH and its individual members, Dr. Himmelstein, Dr. Slade, Mr. McGill, Mr. Scott, and Mr. Tello, agreed to be jointly and severally liable for the Indemnity Provisions. In light of these findings, we turn to the issues presented for our review.

* * *

Dr. Himmelstein argues that the trial court erred by granting summary judgment in favor of Dr. Weinstein on his indemnification claim for two reasons. First, Dr. Himmelstein argues that Dr. Weinstein's

purchase of the Note was voluntary because he was never found to be liable to Raleigh Commons. Second, Dr. Himmelstein argues that Dr. Weinstein paid an unreasonable amount of attorney's fees when he purchased the Note from Raleigh Commons.

*Raleigh I*, at \*11, 14. Accordingly, Dr. Himmelstein's issue raised on appeal in *Raleigh I* concerning the grant of summary judgment with regard to indemnification of Dr. Weinstein focused on (1) whether Dr. Weinstein's payment of the Note was voluntary and (2) the amount of attorney's fees paid to Raleigh Commons when the Note was satisfied.

Following a discussion of general concepts regarding indemnification, this Court concluded:

> In the case at bar, Dr. Weinstein suffered a loss when, in order to avoid having a judgment entered against him, he paid Raleigh Commons for the purchase of the Note. It is undeniable that the liability of Dr. Weinstein was triggered once SWH and its individual members defaulted on their obligation to pay the Note. Therefore, it is disingenuous for Dr. Himmelstein to argue that Dr. Weinstein's purchase of the Note was voluntary. Instead, Dr. Weinstein's purchase of the Note resulted from the indefensible position in which he was placed following the inaction of SWH and its individual members. Accordingly, Dr. Himmelstein's argument that Dr. Weinstein voluntarily purchased the Note is without merit.

*Id*. at \*14. This Court subsequently stated:

> Although Dr. Weinstein undoubtedly has the right to indemnification for his purchase of the Note pursuant to the Indemnity Provisions, the issue remains whether the amount he paid to Raleigh Commons was reasonable.

> \* \* \*

> Dr. Himmelstein argues that Dr. Weinstein was not entitled to summary judgment on his indemnification claim because he paid an unreasonable amount of attorney's fees to Raleigh Commons when he purchased the Note. Specifically, of the $304,218.00 amount that Dr. Weinstein paid for the Note, $52,798.38 of that amount represented the attorney's fees of Raleigh Commons. Dr. Himmelstein points to the transcript of Dr. Weinstein's deposition as evidence that a material factual

13

dispute exists such that summary judgment was inappropriate. When questioned during his deposition about the amount of attorney's fees he paid Raleigh Commons for the Note, Dr. Weinstein stated as follows:

> Q. Were there any negotiations with the—with Raleigh Commons or its representatives about the ultimate amount of the payment that you would make?
>
> A. I believe there was.
>
> Q. Are you familiar with what those negotiations were about or—
>
> A. When the amount was given to me, I was shocked at the total, and I found out that there was a 33 percent fee for the attorney, which I thought was ridiculous since it didn't make any sense that someone that probably spent two or three hours of work would get that much money.
>
> Q. And that would be Mr. Douglas[s]?
>
> A. Correct.
>
> Q. The attorney for Raleigh Commons?
>
> A. Correct.
>
> Q. And what happened when—in regard to that 33 percent figure?
>
> A. I was concerned because Dr. Himmelstein and Dr. Slade were going to ultimately have to pay me for what I was paying, and I thought that was ridiculous. I spoke to Mr. Feldbaum and told him to call Mr. Douglas[s] and mention to him that I'm ready to write a check and see if he could make an accommodation.
>
> Q. So Mr. Feldbaum was assisting you at that time?
>
> A. Correct.

Q. Was Mr. Mitchell still assisting you as well at that time?

A. I believe Mr. Mitchell was. I don't know if it was Mr. Mitchell called or Mr. Feldbaum that called.

Mr. Feldbaum is an acquaintance of both Mr. Mitchell and Mr. Douglas[s], and they were speaking, and I don't know who made the phone call. Someone made the phone call and mentioned that if I paid it now, they would lower his fee to 23 percent or 22 percent. I can't remember the exact amount, but it was less. I think it was 33 to 22, but I'm not certain.

Notwithstanding Dr. Weinstein's alleged efforts to lower the amount of the attorney's fees, Dr. Himmelstein stresses that Dr. Weinstein's statement that "it didn't make any sense that someone that probably spent two or three hours of work would get that much money" demonstrates that a reasonable jury could legitimately resolve this factual dispute in favor of either party.

We note that there is nothing in the record to support the amount of work or the amount of hours spent by counsel for Raleigh Commons. Instead, as emphasized by Dr. Himmelstein, the record does contain the affidavit of one of Dr. Weinstein's attorneys that explains the amount of work and amounts charged for services provided at the outset of this litigation. According to the affidavit, from February 2006 to January 2007, counsel for Dr. Weinstein spent approximately twenty five (25) hours working on this matter and charged Dr. Weinstein a total fee of $4,582.40. On the other hand, counsel for Raleigh Commons received $52,798.38 for its services rendered from the time Raleigh Commons filed its complaint on January 6, 2006, until Dr. Weinstein purchased the Note on September 28, 2006. Viewing this evidence in the light most favorable to Dr. Himmelstein, and drawing all reasonable inferences in his favor, there is clearly a material factual dispute as to the reasonableness of the amount of attorney's fees Dr. Weinstein paid to Raleigh Commons. Accordingly, we reverse the trial court's grant of summary judgment in favor of Dr. Weinstein on his indemnification claim.

*Id*. at *15-16.

15

We have quoted with detail from this Court's prior Opinion for the purpose of demonstrating two points: (1) this Court expressly agreed with the trial court's conclusions that Dr. Weinstein had the right to indemnification for his purchase of the Note and that such purchase was not voluntary and (2) Dr. Himmelstein's argument that Dr. Weinstein was not entitled to summary judgment on his indemnification claim focused on whether Dr. Weinstein paid an unreasonable amount of attorney's fees to Raleigh Commons when he purchased the Note.

Regarding this Court's affirmance of Dr. Weinstein's right to indemnification in general, such ruling has become the law of the case and could not be relitigated upon remand. As this Court has previously explained:

> Under the law of the case doctrine, the appellate court's ruling becomes the law of the case, binding on the parties and on the trial court on remand. *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d 557, 566 (Tenn. Ct. App. 2001). In general, the law of the case doctrine prohibits reconsideration of issues actually decided or necessarily decided by implication in a prior appeal in the same case. *State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000); *Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996). Thus, except in certain limited situations, the trial court cannot revisit an issue decided in a prior appeal in the same case. *Memphis Pub. Co.*, 975 S.W.2d at 306.

*Thornton v. Massey*, No. W2013-01022-COA-R3-CV, 2014 WL 2472206, at *13 (Tenn. Ct. App. May 30, 2014).

With respect to the reasonableness of the amount for which Dr. Weinstein seeks indemnification, which is the amount Dr. Weinstein expended when he purchased the Note from Raleigh Commons, it is clear that this Court's reversal of the trial court's grant of summary judgment in favor of Dr. Weinstein concerning his indemnification claim was solely based on a factual dispute regarding the reasonableness of the amount of attorney's fees paid in connection with that transaction. *See Raleigh I*, at *16 ("[T]here is clearly a material factual dispute as to the reasonableness of the amount of attorney's fees Dr. Weinstein paid to Raleigh Commons. Accordingly, we reverse the trial court's grant of summary judgment in favor of Dr. Weinstein on his indemnification claim.").

In fact, it is clear from this Court's prior Opinion that Dr. Himmelstein's sole focus when arguing that summary judgment was improvidently granted in favor of Dr.

Weinstein on his indemnification claim, aside from an argument regarding whether his payment of the Note was voluntary, was the reasonableness of the amount of attorney's fees Dr. Weinstein paid to Raleigh Commons when purchasing the Note. *See id*. at *16 ("Dr. Himmelstein argues that Dr. Weinstein was not entitled to summary judgment on his indemnification claim because he paid an unreasonable amount of attorney's fees to Raleigh Commons when he purchased the Note."). As such, any issue concerning the propriety of the pay-off amount paid by Dr. Weinstein when purchasing the Note, aside from the amount of attorney's fees paid, would be beyond the scope of this Court's remand in *Raleigh I*. *See Silvey*, 2004 WL 508481, at *3; *see also Bing v. Baptist Mem'l Hosp.-Union City*, 937 S.W.2d 922, 924 (Tenn. Ct. App. 1996) (explaining that issues not raised on appeal were waived). Accordingly, we affirm the trial court's determination that limited the issue for decision on remand to the reasonableness of the amount of attorney's fees paid by Dr. Weinstein when he purchased the Note.

## V. Reasonableness of Amount of Attorney's Fees

Dr. Himmelstein asserts that the trial court erred by ruling that Dr. Weinstein's payment of $52,798.38 in attorney's fees to Raleigh Commons when he purchased the Note was reasonable. Upon our thorough review of the record, we agree with the trial court's ruling.

Our Supreme Court has elucidated the standard of review applicable to a trial court's decision regarding a reasonable amount of attorney's fees as follows:

> The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986), and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010); *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an

17

abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S .W.3d 515, 524 (Tenn. 2010).

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

As this Court explained in *In re Estate of Thompson*, No. M2011-00411-COA-R3-CV, 2012 WL 912859, at *6-7 (Tenn. Ct. App. Mar. 14, 2012), *perm. app. denied* (Tenn. Aug. 15, 2012): "The Rules of Professional Conduct (RPC) contained in Rule 8 of the Rules of the Tennessee Supreme Court address attorney fees. RPC 1.5 lists numerous factors to be considered in determining the reasonableness of an attorney fee. Tenn. Sup. Ct. R. 8, RPC 1.5." Dr. Himmelstein concedes in his appellate brief that the trial court properly applied the factors enumerated in Rule of Professional Conduct 1.5 when making its determination regarding the reasonableness of the fee at issue. Dr. Himmelstein contends that the appropriate inquiry is not whether Mr. Douglass charged a reasonable fee, but whether Dr. Weinstein was reasonable in paying such fee without questioning his liability under the Note or the accuracy of the pay-off amount claimed thereunder. As previously explained, however, this Court ruled in *Raleigh I* that the trial court had correctly determined that Dr. Weinstein had not voluntarily paid this obligation, as Dr. Himmelstein continues to claim, but instead that "Dr. Weinstein's purchase of the Note resulted from the indefensible position in which he was placed following the inaction of SWH and its individual members." *See Raleigh I*, at *14. As such, this ruling has become the law of the case. *See Thornton*, 2014 WL 2472206, at *13. Dr. Himmelstein's argument in this regard is without merit.

Dr. Himmelstein also postulates that Dr. Weinstein's payment of the fee charged was not reasonable because he admitted that said fee was "ridiculously high" and did not use "all available arguments to negotiate the fee down to a reasonable level." Dr. Himmelstein then details various suggestions concerning ways that Dr. Weinstein could have sought to have the fee lowered. The assumption at the heart of this argument, however, is that the fee charged by Mr. Douglass was unreasonable. We have therefore come full circle to reach the ultimate issue determined by the trial court, which was whether the amount charged by Mr. Douglass and paid by Dr. Weinstein to Raleigh Commons in connection with his purchase of the Note constituted a reasonable amount of attorney's fees.

Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5 lists the following factors to be considered when determining the reasonableness of a fee charged by an attorney:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)     whether the fee is fixed or contingent;

(9)     prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)    whether the fee agreement is in writing.

In its June 5, 2017 order, the trial court concluded, following the court's consideration of the evidence in light of the above-listed factors, that the fee charged by Mr. Douglass and paid by Dr. Weinstein was reasonable. The court found that the matter "was not a straightforward note collection case, but instead involved multiple parties, multiple documents including assumption and indemnification agreements, all as evidenced by the more than forty-five docket entries including numerous cross-claims and counterclaims." The court noted that although Mr. Douglass produced no time records or proof as to his regular hourly rate, his uncontradicted testimony was that he spent approximately 100 hours working on the case. According to the court, Mr. Douglass was a longtime member of the bar, having practiced for over forty years. The court further found that contingency fee arrangements for a one-third fee were

19

"customary" in collection cases and that there was no testimony that the charging of a contingency fee in this matter was unreasonable.[1] The court also relied on the fact that Dr. Weinstein was able to negotiate a reduction in the fee from $78,666.00 to $52,798.38. The court therefore awarded Dr. Weinstein a total judgment on his indemnity claim in the amount of $304,218.00, which included the full amount of the attorney's fee of $52,798.38 paid by Dr. Weinstein at the time of his purchase of the promissory note from Raleigh Commons.

As Dr. Himmelstein concedes, the trial court properly considered the factors listed in Rule of Professional Conduct 1.5 when analyzing the reasonableness of Mr. Douglass's fee. We conclude that the court's analysis of those factors in light of the evidence presented at trial was both thorough and accurate. We therefore affirm the trial court's determination that the fee charged by Mr. Douglass and paid by Dr. Weinstein was reasonable.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety. Costs on appeal are taxed to the appellant, Stevan I. Himmelstein, M.D. We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[1] We note that this Court has previously explained that contingency fees are only prohibited in two types of cases: "certain domestic cases" and criminal cases. *See In re Estate of Bingham*, No. M2016-01186-COA-R3-CV, 2017 WL 2558806, at *8 (Tenn. Ct. App. June 13, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017); *Thompson*, 2012 WL 912859, at *6-7; *see also* Tenn. Sup. Ct. R. 8, RPC 1.5(d). It should also be noted that the trial court retains its discretion to determine the reasonableness of any award of attorney's fees, and the fact that the fee is based on a contingency fee contract is just one factor for the court to consider.