**UNITED MEDICAL CORPORATION OF TENNESSEE, INC., Appellant,**

v.

**HOHENWALD BANK AND TRUST COMPANY, Provident Life and Accident Insurance Company, and Farmers Home Administration, Appellees.**

Supreme Court of Tennessee, at Nashville.

Jan. 20, 1986.

Samuel D. Lipshie, Boult, Cummings, Conners & Berry, Nashville, for appellant.

W.C. Keaton, Wm. Landis Turner, David D. Peluso, Hohenwald, for appellees.

## OPINION

COOPER, Chief Justice.

The issue in this case is the fee due an attorney for services rendered in the collection of two promissory notes. The deed of trust securing the payment of the two notes provides that, in event of default, the debtor would be liable for:

> All costs of collecting, including an amount as attorneys' fees not to exceed ten percent (10%) of the principal and interest to be collected.

Giving due notice to the appropriate factors to be used as guides in fixing a reasonable attorney's fee, *see* Disciplinary Rule 2–106 of the Rules of the Supreme Court, the chancellor determined that a reasonable fee for services rendered by counsel for the creditor would be $139,480.82, the maximum amount allowed under the terms of the deed of trust, and entered a judgment for that amount. Considering the same factors, the majority of the Court of Appeals found the fee award to be excessive and reduced the judgment to $72,-000.00. The third member of the court panel would have reduced the fee even more. On reviewing the record, we find ourselves in substantial agreement with the majority of the Court of Appeals as to what constitutes a reasonable fee under the circumstances of this case.

The record shows that in July, 1979, the appellant, United Medical Corporation of Tennessee, Inc., (U.M.C.), entered into an agreement with the defendants and the Third National Bank for a construction loan from Third National Bank in the amount of $1.5 million dollars to be followed by permanent financing in the same total amount by Hohenwald Bank and Trust Company ($150,000), and Provident Life and Accident Insurance Company ($1,350,000). Interest was to be 10.25%. The permanent financing was to be 90% guaranteed by the Farmers Home Administration.

In accordance with their agreement, on July 19, 1979, the parties executed a Term

Loan Agreement, and U.M.C. executed two promissory notes totaling $1.5 million dollars and a deed of trust on hospital property to secure payment of the notes.

At the closing of the permanent financing on December 4, 1980, a Loan Note Guarantee and a Lender's Agreement were executed, the two notes payable to Third National Bank were endorsed to the order of the Hohenwald Bank and Trust Company, and it, in turn, endorsed the larger note to the order of Provident Life and Accident Insurance Company without recourse.

In March, 1981, a dispute arose between the bank and U.M.C. over a $9,000.00 commitment fee allegedly due the bank in connection with the permanent financing arranged for U.M.C. After consulting its counsel, Mr. Dave Peluso, the bank setoff the alleged debt against U.M.C.'s checking account, and had counsel write U.M.C. of its action and request financial information due under the loan agreements.

In October, 1981, the bank received an audited financial statement from U.M.C., which indicated possible violations of the loan agreements. Being the servicing agent for the loan and having the responsibility of enforcing compliance with the loan agreements, the bank had its counsel draft a letter giving U.M.C. formal notice of the apparent violations and calling upon it to bring itself into compliance with the loan agreements. After several meetings with officers of U.M.C. and others, the bank concluded that U.M.C. was in default and instructed counsel to foreclose on the security for the notes and collect the balance due on the notes. Counsel's fee for services rendered in connection with the loan default was to be contingent on his success in collecting the notes, and was subject to the basis provided in the notes and agreements, that is, a reasonable fee not to exceed ten percent of the principal and interest collected.

In February, 1982, counsel drafted a letter formally notifying U.M.C. of violations of the loan agreements and calling upon it to correct the violations within thirty days, or foreclosure would be sought.

The Lender's Agreement between Hohenwald Bank and Trust Company and the Farmers Home Administration, of which U.M.C. was a third party beneficiary, provided:

XI. Defaults by Borrower.

\* \* \* \* \* \*

B. The Lender will negotiate in good faith in an attempt to resolve any problem and to permit the Borrower to cure a default, where reasonable.

Before the expiration of the 30-day notice period, U.M.C. filed the present action denying being in default, and charging that the defendants had "utterly refused to negotiate in good faith in an attempt to resolve any problems and [had] no intention of permitting the borrower to cure any of the pretended defaults," despite section XI of the Lender's Agreement; that defendants' attempt to foreclose was an effort to force plaintiff to refinance at a higher rate of interest or to pay off the 10.25% loans. U.M.C. sought a declaration that it was not in default under the loan agreements, and to enjoin foreclosure. Counsel filed an answer and counterclaim on behalf of the defendant bank, and sought to have the restraining order dissolved.

On April 13, 1982, after a hearing, the chancellor entered an order denying U.M.C. the injunctive relief sought and dismissed the action. U.M.C. appealed. In an opinion dated December 6, 1982, the Court of Appeals affirmed the chancellor's action in dissolving the restraining order and allowing foreclosure, but remanded the case so that U.M.C. could amend its pleadings and be given the opportunity to prove that the foreclosure was wrongful, in which event U.M.C. would be entitled to damages from the lenders. In the meantime, in September, 1982, the Hohenwald Bank was closed by the Tennessee Commissioner of Banking and the Federal Deposit Insurance Corporation was appointed trustee to liquidate the bank. F.D.I.C. continued the employment of Mr. Peluso, with payment of his fee to be on a contingent basis under the provisions of U.M.C.'s notes and deed of

trust. After accepting employment by F.D.I.C. in this one case, Mr. Peluso's law firm was forced to turn down a number of parties who requested representation in other actions brought in local courts by F.D.I.C.

After numerous and protracted discussions between the parties in which counsel was a participant, in July, 1983, the lenders again determined to proceed with foreclosure and collection of the notes. U.M.C. then capitulated and paid the debt and all interest due, and deposited $139,480.82 in the registry of the chancery court to be used to satisfy the attorney's fee found by that court to be reasonable. The only benefit derived by U.M.C. from filing its action was the use of approximately 1.5 million dollars at the very favorable interest rate of 10.25% during the delay while the suit was pending.

The time expended by Mr. Peluso in collecting the debt from U.M.C. was 180.25 hours.

Numerous attorneys were called as witnesses to give an opinion as to the value of the services performed by Mr. Peluso. The value placed on the services ranged from a low of $11,000 to a high of $139,480.82. The low figure calls for payment on an hourly basis. The high figure places emphasis on the complexity of the action since the default was non-monetary, and the fact that the fee was contingent. The high figure is 10% of the amount paid by U.M.C. on the indebtedness.

■ The amount of time expended, and the hourly rate commonly charged by attorneys for doing similar work in the community, while important, are not the only, or even the controlling, factors to be considered. As is pointed out in *Tennessee United Paint Store, Inc. v. Overmyer,* 62 Tenn.App. 721, 467 S.W.2d 806, 810 (1971),

> The amount of an award as an attorney's fee is to be determined upon a consideration of all the facts and circumstances presented by the record, primarily the amount involved and available, the nature of the responsibility assumed by the attorneys, and the character and extent

of the services which they have performed, not only in the technical litigation itself, but also in matters arising out of and incidental to such litigation. *Carmack v. Fidelity-Bankers Trust Co.,* [(1944) 180 Tenn. 571, 177 S.W.2d 351]

In writing for this court in *Connors v. Connors,* 594 S.W.2d 672 (Tenn.1980), Mr. Justice Fones concisely stated the appropriate facts that have been used as guides, and as guides only, in fixing a reasonable attorney's fee, to be as follows:

1. The time devoted to performing the legal service.

2. The time limitations imposed by the circumstances.

3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

4. The fee customarily charged in the locality for similar legal services.

5. The amount involved and the results obtained.

6. The experience, reputation, and ability of the lawyer performing the legal service.

■ As noted by Mr. Justice Fones, these are substantially the guidelines listed in Tennessee Supreme Court Rule 8, Code of Professional Responsibility, DR 2–106(B). The Rule does specify two other factors to be considered in determining the reasonableness of an attorney's fee, both of which are pertinent to a decision in this case—those are, whether the fee is fixed or contingent, and the nature and length of the professional relationship to the client. An attorney's fee should be greater where it is contingent than where it is fixed. *See Hail v. Nashville Trust Company,* 31 Tenn.App. 39, 212 S.W.2d 51 (1948).

U.M.C. insists that the "contingency factor" should not be applied to justify a fee award that is not commensurate with Mr. Peluso's hourly rate. U.M.C. argues that there was little, if any, risk to counsel in being paid on a contingent basis since there was no question but that U.M.C. was

in default with respect to non-monetary obligations prescribed by the loan documents, and that the value of the collateral securing the indebtedness exceeded the amount of the debt. The assertion that U.M.C. was admittedly in default of the loan agreements is contrary to the position taken by U.M.C. in filing the present action. The charges then were that the lenders were acting in bad faith and were in breach of the loan agreements, and that U.M.C. was not in default. This position was adhered to by U.M.C. through the Court of Appeals, where U.M.C. was successful in securing a judgment giving it the opportunity to prove that the foreclosure was wrongful. If U.M.C. had been able to prove its charges, counsel would have gone unpaid for his services, and U.M.C. did not acknowledge that it could not prove its charged until faced with the ultimate fact of foreclosure, some two years after U.M.C. was in default.

U.M.C. also suggests that this court adopt the "lodestar" approach now applied by the federal courts in making fee awards under 42 U.S.C. § 1988. *See Northcross v. Board of Education* 611 F.2d 624 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed. 862 (1980). The "lodestar" approach places primary emphasis on the hours of effort reasonably expended by the attorney and the rate customarily charged, with an adjustment, usually on a percentage basis, of the usual hourly rate to reflect the risk, or contingency assumed by the attorney in representing their client. We see no advantage to this approach over the consideration of the several factors set out in Disciplinary Rule 2–106(B), which include time expended and the customary hourly charges in the locality. Under either, the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and the experience of the trier of facts, with the ultimate goal being the securing of payment of a reasonable fee.

■ On reviewing the services rendered by Mr. Peluso in this case and applying the guidelines listed in Disciplinary Rule 2–106,

we have come to the conclusion that the fee fixed by the Court of Appeals is within the range of reason. Accordingly we affirm the judgment of the Court of Appeals. Costs are adjudged against U.M.C. and its surety.

FONES, BROCK, HARBISON and DROWOTA, JJ., concur.