IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2004 Session

## DANIEL HAMILTON v. T & W OF KNOXVILLE, INC., d/b/a LEXUS OF KNOXVILLE

**Appeal from the Circuit Court for Knox County**
**No. 1-559-01      Dale Workman, Judge**

**FILED MAY 4, 2004**

**No. E2003-02004-COA-R3-CV**

By special verdict the jury found that the defendant automobile dealer willfully and knowingly violated the Consumer Protection Act by selling the Plaintiff a used Lexus automobile that had been wrecked but nevertheless was a certified vehicle under the manufacturer's guidelines.  More than a year later - after the Plaintiff himself wrecked the vehicle and drag-raced it various times - he discovered that some panels had been re-painted, leading to the conclusion that the vehicle had been wrecked before he purchased it.  The dealer agreed to repurchase the vehicle which was left in its charge, but the Plaintiff, after consulting counsel, returned to the Defendant's place of business and removed the vehicle.  The jury assessed damages of $4000.00, remitted to $2500.00.  The Plaintiff moved for treble damages and attorney fees: the Defendant moved for judgment NOV, because the issue of "willful and knowing" violation of the Tennessee Consumer Protection Act is a question of law for the court.  The motion for judgment NOV was granted. Plaintiff was awarded $5000.00 attorney fees which he claims is inadequate.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., E.S. and CHARLES D. SUSANO, JR., J., joined.

William Turner Boone and M. Douglas Campbell, Jr., Knoxville, Tennessee, attorneys for appellant, Daniel Hamilton.

Albert J. Harb and Kristi M. Davis, Knoxville, Tennessee, attorneys for appellee, T & W of Knoxville, Inc., d/b/a Lexus of Knoxville.

### OPINION

Plaintiff alleged that he purchased a 1997 Lexus ES 300 from a dealer, Lexus of Knoxville, which represented that it was a certified pre-owned vehicle that had never been wrecked.  Nine months later he learned that the ES 300 had been wrecked and did not meet the requirements for

being a certified pre-owned Lexus. The Plaintiff sought relief against Lexus of Knoxville for breach of warranty, fraud, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101.

The case was tried before a jury on February 26 and 27, 2003, on the *claims of fraud and violation of the Consumer Protection Act.* At the close of Plaintiff's proof, the Defendant moved for a directed verdict as to all issues regarding intentional and/or fraudulent misrepresentation. The motion was granted with respect to the claims of intentional and/or fraudulent misrepresentation and punitive damages, but was denied with respect to whether Defendant knowingly or willfully violated the Consumer Protection Act. The jury found that the Defendant willfully and knowingly violated the Consumer Protection Act and awarded damages of $4000.00.

Plaintiff thereafter filed a motion for attorney fees, costs, and treble damages. The Defendant filed motions seeking a new trial, a judgment NOV with respect to whether Lexus of Knoxville's violations of the Consumer Protection Act were willful or knowing, a remittitur, and costs. The trial court denied the Defendant's motions for new trial and costs, but remitted the verdict to $2500.00 and granted the Defendant judgment NOV with respect to whether it knowingly or willfully violated the Consumer Protection Act. The trial court denied Plaintiff's motion for treble damages but awarded Plaintiff $5000.00 for attorney fees and litigation expenses. A final judgment in the amount of $7500.00 was thereupon entered July 16, 2003.

The Plaintiff appeals, and presents for review the issues of (1) whether there was material evidence to support the finding of the jury that the Defendant knowingly and willfully engaged in unfair or deceptive practices, (2) whether the award of $5000.00 attorney fees was adequate, (3) whether an offer of judgment by the Defendant should have been considered for any purpose. As to factual matters found by the trial judge, appellate review is *de novo*, accompanied by the presumption that the judgment is correct unless the evidence otherwise preponderates. As to questions of law, no presumption attaches; and finding of fact by a jury shall be set aside only if there is no material evidence to support the verdict. Rule 13(d) Tenn. R. App. P. *See, also*, **Presley v. Bennett**, 860 S.W.2d 857 (Tenn. 1993).

## I.

The Consumer Protection Act, Tenn. Code Ann. 47-18-101, *et seq.*, prohibits unfair or deceptive trade practices. If the use of such practices is found by the *court* to be willful and knowing, the court "may award three times the actual damages sustained" together with reasonable attorney fees. The Defendant argues that the issue of "willful and knowing" should not have been submitted to the jury because it is the "trial judge and not the jury that decides whether the defendant's violation was knowing and willful." We agree. This point is clearly expounded in **Concrete Spaces v. Sender**, 2 S.W.3d 901 (Tenn. 1999)(Fnt 13), and **Buddy Lee Attractions v. Wm. Morris Agency**, 13 S.W.3d 343 (Tenn. Ct. App. 1999).

The trial judge granted the Defendant's motion for judgment NOV which inferentially allows the conclusion that he found the evidence non-supportive of the claim that the Defendant engaged in unfair and deceptive trade practices. This finding involves a question of law which we review *de novo* with no presumption of correctness. *See, **Presley**, supra.*

**II.**

In July of 2000, the Plaintiff, while shopping for another vehicle, looked at a used, 1997 Lexus ES 300 at the Lexus dealer in Knoxville. He talked to a salesman who told him that the ES 300 was a Lexus certified pre-owned vehicle and had been rigorously inspected, and that as far as he knew it had never been wrecked. Relying upon these representations, Plaintiff purchased the vehicle by trading in his Jeep Grand Cherokee. The purchase price for the ES 300 was $24,880.14.

In order to sell a vehicle as a certified pre-owned Lexus, the dealer must determine that the vehicle meets all of the conditions specified in "the Lexus Certified Pre-Owned Policies and Procedures Manual." One of the conditions required that the vehicle must be thoroughly inspected in accordance with the standards set forth in the Lexus Pre-Owned Vehicle Preparation Guide, which provides that the inspecting technician should make a close visual and hand inspection of all body panels, both under fluorescent light and natural light. If any previous bodywork does not meet Lexus quality standards or if there is "any sign that more than four outer-body panels have been repainted and/or painted," the vehicle cannot be certified. The guide further provides that the paint quality on certified vehicles must conform to new-vehicle factory specifications.

About nine months after purchasing the ES 300, Plaintiff learned that it had been wrecked and repainted. Another dealer, Oak Ridge Chrysler Jeep, had inspected it in connection with a possible trade and discovered the prior wreckage, because the driver's side rear fender, rear door, bumper, trunk, and roof of the vehicle had been repainted. Immediately after discovering the damage, Plaintiff took the car to Lexus of Knoxville, whose technicians confirmed that it had been repainted. Plaintiff then demanded that Lexus of Knoxville repurchase the car. The Plaintiff had owned the car nine months and had driven it about 12,000 miles. The Defendant offered to purchase the car for $17,500.00, about $10,000.00 less than what Plaintiff had paid for it.

Plaintiff's expert testified that he had inspected the ES 300 and determined that five body panels on the ES 300 had been painted, specifically the rear bumper, trunk lid, left rear quarter panel, driver's side rear door, and roof. He testified that the repainting work was not up to new car standards, that the paint did not exactly match, and that there were some rough edges and over-spray on gaskets and seals. He also testified that it was not difficult to determine that the vehicle had been repainted, as a result of which its value at the time of purchase, was $2500.00 less than a similarly equipped 1997 ES 300 that had not been painted.

The proof further revealed that the salesman who represented that the ES 300 had not been wrecked had never personally inspected the ES 300 and did not know whether or not the vehicle had been wrecked. Further, the Defendant's general manager, Taft Butcher, testified that although he

knew that Lexus required all certified vehicles to be inspected in accordance with the Lexus Certified Vehicle Preparation Guide, Lexus of Knoxville did not have a copy of the guide available for its technicians and did not know that the guide existed at the time it sold the ES 300, although this information was available on the computer network.

### III.

As we have seen, the issues of whether the Defendant knowingly and willfully violated the Consumer Protection Act is a question for the trial judge. He approved the verdict that the Defendant violated the Act but held that the violations were not willful or knowing. We infer that the trial judge was doubtlessly influenced by the Plaintiff's conduct upon discovery that certain panels of the Lexus had been repainted. He returned the vehicle to the defendant which offered to re-purchase it for $17,500.00. This offer was apparently accepted by the Plaintiff, who thereupon left it at the dealership and agreed to return later for a check. Instead, he more or less surreptitiously removed the vehicle, employed an attorney, and filed this action on September 11, 2001. [The Plaintiff purchased the Lexus in July 2000.] He returned to the dealership numerous times after purchasing the vehicle for service under the warranty to which he was entitled under the certification. For months after the purchase, the Plaintiff drag-raced the vehicle and wrecked it; there was undisputed proof that drag-racing voids any warranty and that if the Plaintiff had informed the dealer of the drag-racing, the warranty would not have covered many of the repairs made by the dealer in the ordinary course of business owing to the certification of the vehicle.

The Plaintiff's expert testified that the vehicle was worth $2500.00 less because of the re-painting, but conceded that he was unaware that the vehicle was used for drag-racing by the Plaintiff who had himself wrecked it and concealed the fact. The Defendant's experts testified that the paint quality was excellent and conformed to Lexus standards and that the vehicle had been certified. While the thrust of the Plaintiff's brief is that the vehicle was not certified, the proof established the contrary: that it was certified which entitled the Plaintiff to the extended warranty which he received. The evidence falls far short of proving that the Defendant knowingly and willfully violated the Consumer Protection Act and this finding is affirmed.

The Plaintiff complains that the award of $5000.00 attorney fees is inadequate and that the Defendant's offer of judgment for $3000.00 should not have been considered by the court.

When Defendant learned that the Plaintiff's expert would opine that the vehicle was worth $2500.00 less because of the repainting, it made an offer of judgment for $3000.00 which was ignored. Three weeks later - after the Plaintiff's discovery deposition - the offer of judgment was renewed, and again denied. The Plaintiff testified that his attorney was "on contingency" and was to receive a percentage of his recovery as his fee. At the trial the Plaintiff testified that he had incurred attorney's fees of $9971.00, but in his motion filed after the trial the claimed fees were $24,522.90.

The Defendant argues that attorney fees are not authorized by the Consumer Protection Act absent a finding that the acts complained of were willfully and knowingly committed. A strict reading of the Act tends to support this argument, but the point has been adjudicated otherwise in **Smith v. Scott Lewis Chev. Inc.**, 843 S.W.2d 9 (Tenn. Ct. App. 1992) and **Brungard v. Caprice Records, Inc.**, 608 S.W.2d 585 (Tenn. Ct. App. 1980). The Plaintiff was awarded attorney's fees of $5000.00; the Plaintiff, as we have stated, argues that this amount is inadequate, because his attorney worked 201.8 hours on his case. The record does not reveal the precise reasons why this simple case required such temporal expenditures; in any event the Defendant concedes that the award of $5000.00 is not an abuse of discretion, but that a greater amount would be in light of the "General Sessions Court" nature of this case.

A determination of reasonable attorney's fees and costs is necessarily a discretionary inquiry. **United Med. Corp of Tenn. V. Hohenwald Bank & Trust Co.**, 703 S.W.2d 133, 137 (Tenn. 1986); **Sanders v. Gray**, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998); *see also* Tenn. R. Civ. P. 54.04(2). As there is no fixed mathematical rule in this jurisdiction for determining reasonable fees and costs, an appellate court will normally defer to a trial court's award of attorney's fees unless there is "a showing of an abuse of [the trial court's] discretion." **Threadgill v. Threadgill**, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987); *see also* **Sanders**, 989 S.W.2d at 345. In evaluating the lower court's exercise of its discretion in a non-jury setting, we review its award *de novo*. We will not disturb the trial court's award unless we find that the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d).

A reasonable attorney's fee is determined in accordance with Tenn. Code of Professional Responsibility DT 2-106 (2002), which is a part of Tenn. Sup. Ct. R. 8. DR 2-106 provides, in pertinent part, as follows:

> (B) . . . Factors to be considered as guides in determining the reasonableness of a fee include the following:
>   (1)   The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>   (2)   The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>   (3)   The fee customarily charged in the locality for similar legal services.
>   (4)   The amount involved and the results obtained.
>   (5)   The time limitations imposed by the client or by the circumstances.
>   (6)   The nature and length of the professional relationship with the client.
>   (7)   The experience, reputation, and ability of the lawyer or lawyers performing the services.
>   (8)   Whether the fee is fixed or contingent.

*Inter alia*, the Plaintiff argues that the fee of $5000.00 was based on the fact that the trial court improperly considered the Defendant's offer of judgment for $3000.00. This colloquy occurred:

The Court: In this case an offer of judgment was made when?

Mr. Boone: The offer of judgment cannot be considered on motion for attorney fees.

The Court: Why not? When did they offer you $3000.00?

Mr. Boone: In January of '03.

The Court: Okay, in January of '03. How much of your fee had accrued prior to January of '03?

Mr. Boone: About $5000.00.

The Court: Okay.

Mr. Boone: Little bit more than $5000.00. And no, we cannot consider it.

The Court: By that time had you got your expert witness?

Mr. Boone: Yes.

The Court: And he told you the actual difference in the value of this car as it was sold, had it been painted, was $2500.00.

Mr. Boone: That's correct.

The Court: And they offered you $3000.00?

Mr. Boone: That's correct. But we'd incurred five thousand and some dollars attorney's fees, so by offering him - -

The Court: Doing what?

Mr. Boone: If he'd took that he'd lost $2600.00.

\* \* \* \* \*

The Court: . . . . In the facts of this case, the Court, as a wayside, would not [sic] find a fee of $5,000.00 at the time the offer of judgment was made, and for a full fee

in this case, would be a fair fee. So if all take it up, hopefully I won't have to see it again.

Mr. Harb: Thank you, Your Honor.

Mr. Boone: What are you saying the fee is?

The Court: I'm not saying there's any fee. Because I grant the judgment NOV on the basis it was knowing and willful. But if I were to award a fee, if I'm in error on that, having looked at all the issues I think a fee of $5000.00 would be a fair and reasonable fee.

Mr. Boone: You do not have to find a knowing and willful violation of the Consumer Protection Act to award attorney's fees.

The Court: Yes you do.

Mr. Boone: You do not.

The Court: Okay.

Mr. Boone: There's nowhere it says. It says upon a finding by the court that a provision of this part has been violated, the court may award the person bringing such action reasonable attorney fees. A provision of this law - -

The Court: The award is a $5000.00 fee, you have a right to take knowing and willful to treble. You're correct, I forgot, you're correct. The Court awards a $5000.00 fee. And I think it is interesting that the client has no fee agreement yet the lawyer sends out a bill for $25,000. Anything else?

Mr. Boone: To the extent - -

The Court: Anything else?

Mr. Boone: To the extent that you're considering the offer of judgment, is that the award -

The Court: The offer of judgment cuts off court costs only, because I've already ruled.

Mr. Boone: But it cannot be considered in a motion for attorney fees.

The Court: Of [sic] yeah, I considered it as one of the factors.

Mr. Boone: But then -

-7-

The Court:    I didn't consider it abusive but it is one of the factors that occurred.

Mr. Boone:    In *Mercer*, 945 S.W.2d -

The Court:    It is a factor, it can be considered a factor. No it is not absolute, no it does not cut it off. Feel free to take me up.

The Plaintiff argues that offers of judgment cannot be considered, citing **Albright v. Mercer**, 945 S.W.2d 749 (Tenn. Ct. App. 1996). This case did not implicate the Consumer Protection Act which provides that "upon proof that [the Defendant] has made a written, reasonable proof of settlement . . . the amount of the recovery may be limited to the offer." We think an offer may be considered by the trial judge in the common-sense exercise of discretion, together and with emphasis upon the factors enumerated in DR 2-106. We cannot find that the trial judge abused his discretion in awarding an attorney's fee less than the amount requested.

The judgment is affirmed at the costs of the Appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE