IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 28, 2022 Session

## SYPRISS SMITH v. ALL NATIONS CHURCH OF GOD ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-17-41  Donald H. Allen, Judge**

_____

### No. W2021-00846-COA-R3-CV
_____

This case stems from a retaliatory discharge claim under the Tennessee Public Protection Act. The jury found for the plaintiff and awarded her $3,000.00 in compensatory damages and $12,500.00 in punitive damages. The trial court then awarded the plaintiff $12,500.00 of the over $100,000.00 in attorney's fees she requested. Following a remand from this Court, the trial court increased the attorney's fees award to $32,000.00. Discerning no abuse of discretion in the trial court's second attorney's fees award, we affirm. We also award the plaintiff her reasonable attorney's fees incurred in prosecuting the first appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and CARMA DENNIS MCGEE, J., joined.

Robert David Martin and Thomas W. Shumate, IV, Nashville, Tennessee, for the appellant, Sypriss Smith.

Nathan Blake Pride, Jackson, Tennessee, for the appellee, All Nations Church of God d/b/a Covenant Child Care Development Center.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

This case is before us for the second time in an effort to determine the

reasonableness of the attorney's fees award granted after a successful whistleblower action. ***Smith v. All Nations Church of God***, No. W2019-02184-COA-R3-CV, 2020 WL 6940703, at \*12 (Tenn. Ct. App. Nov. 25, 2020). As such, we will provide only an abbreviated recounting of the facts necessary to adjudicate the narrow issue on appeal.

In 2016, Plaintiff/Appellant Sypriss Smith ("Appellant") was an employee of the daycare run by Defendant/Appellee All Nations Church of God ("All Nations"). In the course of her employment, Appellant reported All Nations to the Tennessee Department of Children's Services ("DCS"), based on alleged child abuse she observed at the daycare. Shortly thereafter, All Nations terminated Appellant's employment in a voicemail from the church's pastor directly referencing the DCS investigation.

As a result, on February 17, 2017, Appellant filed a claim against All Nations in the Madison County Circuit Court. Appellant's complaint set forth three causes of action:

> (1) a violation of the Tennessee Public Protection Act ("TPPA"), for retaliation against a whistleblower; (2) a violation of the Americans with Disabilities Act and the Tennessee Disability Act [];[1] and (3) a violation of the Civil Rights Act and the Tennessee Human Rights Act [] due to religious discrimination.[2]

***Id.*** at \*1. In her prayer for relief, Appellant requested back pay, front pay, and other compensatory damages "in an amount not less than $100,000.00"; punitive damages "in an amount not less than $500,000.00"; a permanent injunction; and pre- and post-judgment interest, costs, and reasonable attorney's fees.

Following the filing of the complaint, the parties conducted two rounds of written discovery and seven depositions, were ordered to mediation twice, and reset trial dates three times. All Nations refused to appear for the first mediation, only informing Appellant the night before the scheduled date of its intentions. Appellant requested her reasonable attorney's fees in arguing her resulting motion to extend the mediation deadline. The trial court again ordered All Nations to participate and reserved the award of attorney's fees related to that request. Prior to the first scheduled trial date in October 2018, Appellant furnished a settlement offer of $40,000.00. All Nations failed to respond. Conversely, All Nations offered Appellant $5,000.00 to settle in approximately May 2019, after the parties were ordered to mediation for the second time. Appellant declined the offer. The parties continued to trial after various delays and continuances.

After the two-day trial in July 2019, the jury returned a verdict for Appellant on the

---

[1] This claim related to Appellant's allegation that she was terminated for taking time off work to obtain necessary allergy shots.

[2] This claim related to Appellant's allegation that she was terminated for refusing to take part in All Nations' church services.

TPPA claim[3] and awarded a total of $15,500.00: $2,500.00 in lost wages, $500.00 in emotional damages, and $12,500.00 in punitive damages. The trial court entered a judgment on the jury verdict on August 1, 2019.

Thereafter, Appellant moved for $107,756.91 in attorney's fees and expenses. Appellant filed a memorandum in support of the motion, as well as a letter sent to All Nations during the proceedings warning of the high amount of attorney's fees, detailed time sheets showing the work performed by Appellant's counsel on the matter, a declaration from Appellant's primary counsel, a 2013 fee survey showing the fees charged to be in line with both the Nashville and Memphis areas, and declarations from two unaffiliated attorneys as to the reasonableness of the fees in relation to both a TPPA claim and compared to other attorneys in the Middle Tennessee area. In response, All Nations argued that the fees requested were excessive and not directly related to the successful claim and that an award of $10,000.00 in attorney's fees would be reasonable.

On November 13, 2019, the trial court granted Appellant's request for attorney's fees, in part. The trial court found the requested amount to be excessive both in relation to the damages awarded by the jury and because Appellant was only successful on one of her three original claims. Instead, the trial court found the amount awarded by the jury in punitive damages to be a reasonable amount, and awarded Appellant $12,500.00 in attorney's fees, an 88% reduction of her requested amount.

Appellant appealed to this Court in December 2019. After reviewing the record, we found insufficient reasoning to support the trial court's reduction of the requested attorney's fees award. In a November 25, 2020 opinion, we vacated the trial court's judgment and remanded for further proceedings so that a more detailed order could be entered. Specifically, we concluded that:

> [T]he trial court's findings with regard to the excessiveness of both the hours incurred and the hourly rate in the locality is so vague as to be practically nugatory for purposes of appellate review. Leaving out this factor, the bulk of the trial court's ruling seems to focus solely on the results obtained by Appellant in this matter. However, the Tennessee Supreme Court has generally cautioned against reliance on a single factor in determining a reasonable attorney's fee under the circumstances. And nothing in the record indicates that the trial court in any way considered Appellant's arguments that this case was not an appropriate circumstance for near total reliance on that factor, given the high burden required of a TPPA claim and the resulting

---

[3] Prior to trial, the religious discrimination claim was voluntarily withdrawn by Appellant, leaving only the TPPA and disability discrimination claims for the jury. The jury found (1) that Appellant had met her burden of showing that her sole reason for discharge was her refusal to participate in, or remain silent about, illegal activities, and (2) that Appellant did not have a disability, Appellant was qualified to perform her job, and disability was not a motivating factor in the decision to fire Appellant.

undesirability of the case, the alternative nature of Appellant's [disability discrimination] claim, and the policy of protection inherent in civil rights and consumer protection-type actions, if applicable. Moreover, the trial court's order leaves us with doubt as to whether the trial court considered All Nations' conduct with regard to the cancelled mediation, upon which the trial court had reserved attorney's fees, the contingent nature [of] the representation, and the jury's actual verdict that the termination of Appellant's employment was unrelated to any alleged poor performance. Respectfully, these deficiencies coupled with the trial court's decision to identically mimic the jury's award of punitive damages undermines All Nations' suggestion that the fee award was actually the product of a careful weighing of all of the factors. In the absence of more specific findings by the trial court to support such a drastic reduction in fees, we must conclude that it failed to 'clearly and thoroughly explain the particular circumstances and factors supporting [its] determination of a reasonable fee' in this case. In this situation, a remand to the trial court is necessary.

*Smith*, 2020 WL 6940703, at *12 (citations omitted).

In March 2021, Appellant filed her renewed motion for attorney's fees with the trial court, in which she requested $118,929.50 in attorney's fees. In addition to the evidence previously presented, Appellant attached declarations from two unaffiliated attorneys practicing employment law locally, attesting to the reasonableness of the hourly rates requested. Appellant argued that a majority of the relevant factors were in her favor. Pointing to the testimony of other employment law attorneys, Appellant explained that the "sole cause" burden of proof made TPPA claims difficult and undesirable, which the fee-shifting provision in the statute was meant to counter. Only allowing attorneys to recoup fees in proportion to the actual amount recovered after taking a retaliatory discharge case on contingency would discourage attorneys from representing low-wage earners like herself, Appellant contended.

In response, All Nations argued that the case was "perhaps the simplest case and easiest case" Appellant's counsel would ever have. Furthermore, All Nations reasoned, because Appellant had won only one of her original three causes of action, Appellant's primary counsel had spent two-thirds of his time on losing claims and should not be compensated for the services rendered not related to the jury award. All Nations did not dispute that Appellant should be awarded some attorney's fees, but wanted the amount to reflect a billable rate reflective of the locality and only that time spent on Appellant's successful claim. All Nations included with its brief three affidavits from attorneys practicing in rural West Tennessee, attesting to average in-court rates of $250.00 per hour and average out-of-court rates of $175.00 per hour, as well as a fourth attesting to general local rates of $275.00 to $300.00 per hour. All Nations did not, however, refer to specific time entries in explaining which time entries were unrelated to the TPPA claim, instead

pointing to "normal math" and "common sense."

On April 23, 2021, the parties were again before the trial court. Appellant emphasized the reasonableness of the rate billed by her counsel and the public policy reasons supporting the full award of fees incurred in TPPA cases for low-wage earners. Appellant stressed that she could not have prevailed on both the TPPA claim and the disability discrimination claim based on the conflicting burdens of proof, but that the jury had found for her on the more onerous cause of action. Therefore, Appellant argued, it was not reasonable to discount the requested fees amount by two thirds, especially without pointing to specific unnecessary billing entries.

All Nations addressed the time spent on the disability discrimination proof at trial and how the ease of the TPPA claim did not require all of the hours billed to prove. All Nations argued that the amount was unreasonable, excessive, and unnecessary relative to Appellant's success on only one of the original three counts in her complaint. Instead, All Nations found an award of $28,500.00 to be reasonable, allowing for one-third of Appellant's primary counsel's hours at a rate of $275.00 an hour.

The trial court looked to the relevant factors, focusing primarily on the fact that the jury did not find for Appellant on the disability claim, the relatively small amount awarded by the jury compared to the amount requested in the complaint, and the "fairly straightforward" nature of the case. The trial court pointed to Appellant's initial settlement offer of $40,000.00, which would have entitled Appellant's counsel to $16,000.00 in fees based on the fee agreement signed by Appellant.[4]

The trial court issued an order revising the amount of fees awarded on July 19, 2021. This order incorporated the entire transcript from the April 23, 2021 hearing as the findings of fact and conclusions of law of the trial court.[5] Therein, the trial court awarded Appellant $32,000.00 in attorney's fees—an increase of over 150% from the amount initially awarded, but still only roughly 27% of the amount requested. Specifically, the trial court's order stated as follows:

---

[4] The fee agreement between Appellant and her counsel reads:

> Meridian Law is to render its services on a contingency fee basis. If recovery is had, Meridian Law will receive as its fee the greater of: (1) 40% of any total amount received in any settlement or awarded by a judge or jury, including attorney's fees; or (2) actual attorney's fees accrued or awarded.

[5] The trial court's order is two pages in length and incorporates a ninety-page transcript. Discussion of the trial court's findings and conclusions only begins on page sixty-seven of that transcript. The trial court's efforts to comply with the terms of our remand requiring a clear and thorough explanation of its decision appear somewhat half-hearted; it should not fall to this Court to parse out a trial court's ruling from its colloquy. *Cf.* ***Smith v. UHS of Lakeside, Inc.***, No. W2011-02405-COA-R3-CV, 2013 WL 210250, at *9 (Tenn. Ct. App. Jan. 18, 2013) (citations omitted), *aff'd*, 439 S.W.3d 303 (Tenn. 2014).

The Plaintiff requests attorneys' fees and expenses of $118,929.50. The Court finds this amount to be excessive because the jury did not find in favor of Plaintiff on her alternative claim for relief under the Tennessee Disability Act and Plaintiff voluntarily dismissed her alternative claim under the Tennessee Human Rights Act prior to trial. Additionally, the Court finds that the hourly rate charged by the Plaintiff's attorneys is higher than hourly rates of attorneys in Jackson, Tennessee. Finally, The Court finds that the this was a simple case that wasn't valued anywhere near what the Plaintiff was requesting in terms of damages, evidenced by the jury award of only $3,000 in back pay and compensatory damages. As such, the Court awards the Plaintiff $32,000 in attorneys' fees, based upon its findings of facts and conclusions of law as stated in open court on the April 23rd, 2021 hearing.

Appellant therefore filed a timely appeal to this Court, again disputing only the amount of attorney's fees awarded by the trial court. [moved]

## II. ISSUES PRESENTED

Appellant raises two issues in this appeal, which are slightly restated from her brief:

1. Whether the trial court abused its discretion in reducing Appellant's attorney's fees award from the requested $118,929.50 to $32,000.00.

2. Whether Appellant should be awarded her attorney's fees from the first appeal and this appeal.

## III. ANALYSIS

### A.

Tennessee follows the American Rule regarding attorney's fees. ***Cracker Barrel Old Country Store, Inc. v. Epperson***, 284 S.W.3d 303, 308 (Tenn. 2009). Under the American Rule, a party may recover attorney's fees "only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." ***Id.***

In this case, Appellant prevailed in her claim that her employment was terminated for her refusal to remain silent about illegal activities under the TPPA. The TPPA provides that "[a]ny employee terminated in violation of subsection (b) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for the actions shall be entitled to recover reasonable attorney fees and costs." Tenn. Code Ann. § 50-1-304(c)(2). Thus, there is no dispute in this appeal that Appellant is entitled to reasonable attorney's fees

incurred in prosecuting her action. So the dispute in this case concerns what a reasonable fee should be under the circumstances of this case.

In analyzing this issue, both the trial court and this Court are guided by the Tennessee Rules of Professional Conduct, which provides a non-exhaustive list of factors for courts to use in determining whether an attorney's fees are reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

Tenn. R. Sup. Ct. 8, RPC 1.5. Every factor may not be relevant in all cases, *Wright*, 337 S.W.3d at 181 n.21, but "attorney's time and labor will always be relevant in cases where the court is asked to determine a reasonable fee." *Id.* at 181.

While there is no obligation to conduct an explicit discussion of each factor, courts generally must do more than just cursorily mention each factor without providing a factual basis for its decision. *Grissom v. Grissom*, 586 S.W.3d 387, 399 (Tenn. Ct. App. 2019) (citing *Keisling*, 196 S.W.3d at 723). Rather, the appropriate procedure is as follows:

> In terms of procedure, the trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that depends upon the particular circumstances of the individual case. To enable appellate review, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination of a reasonable fee in a given case.

*Wright*, 337 S.W.3d at 185–86 (internal quotation marks, alterations, and citations omitted). While "the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and the experience of the trier of facts, with the ultimate goal being the securing of payment of a reasonable fee," *United Med. Corp.*, 703 S.W.2d at 137, "ultimately the reasonableness of the fee must depend on the particular circumstances

of the individual case." **White v. McBride**, 937 S.W.2d 796, 800 (Tenn. 1996) (citing **Hail v. Nashville Tr. Co.**, 212 S.W.2d 51 (1948)).

Once the trial court has followed the appropriate procedure to determine a reasonable fee, our review is limited:

> The trial court's determination of a reasonable attorney's fee is "subjective judgment based on evidence and the experience of the trier of facts," **United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Tr. Co.**, 703 S.W.2d 133, 137 (Tenn. 1986), and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. **Killingsworth v. Ted Russell Ford, Inc.**, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. **Kline v. Eyrich**, 69 S.W.3d 197, 203 (Tenn. 2002); **Shamblin v. Sylvester**, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. **Henderson v. SAIA, Inc.**, 318 S.W.3d 328, 335 (Tenn. 2010); **Keisling v. Keisling**, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

**Wright ex rel. Wright v. Wright**, 337 S.W.3d 166, 176 (Tenn. 2011). But see

> The abuse of discretion standard does not substitute the appellate court's judgment for that of the trial court. **Id.** (citing **Williams v. Baptist Mem'l Hosp.**, 193 S.W.3d 545, 551 (Tenn. 2006); **Myint v. Allstate Ins. Co.**, 970 S.W.2d 920, 927 (Tenn. 1998)). Rather, "[a] court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." **Fisher v. Hargett**, 604 S.W.3d 381, 395 (Tenn. 2020).

Appellant argues that the trial court indeed abused its discretion in this case by misapplying the factors set forth in Tennessee Rule of Professional Conduct 1.5(a) and "reaching an arbitrary, illogical decision based on a clearly erroneous assessment of the evidence before it, and employing reasoning that caused an injustice to Smith." As relief, Appellant requests independent review of her renewed motion for $118,929.50 in attorney's fees plus the fees incurred in both appeals. In reply, All Nations denies an abuse of discretion, arguing that the trial court properly considered all relevant factors, including the simplicity of the case and proportionality to the damages recovered, in limiting the amount of attorney's fees awarded.

In the first appeal of this case, we concluded that the record created by the trial court in reducing the award requested by Appellant was "so vague as to be practically nugatory for purposes of appellate review." **Smith**, 2020 WL 6940703, at *10. On remand, the trial

court more clearly addressed each RPC 1.5(a) factor to develop a record for this Court to review. To start, the trial court found that factors (2), (5), (6), (9), and (10) were either irrelevant or inconsequential based on the circumstances of this case. Appellant does not argue that these factors were critical to the determination of a reasonable fees award. We generally agree that these factors are not the crux of this dispute. There was nothing in the record to indicate that this case precluded Appellant's counsel from other employment (factor 2) or that there were any time limitations imposed by the situation or the circumstances (factor 5). Both of these factors disfavor a higher attorney's fees award. *See Lowe v. Johnson Cnty.*, No. 03A01-9309-CH-00321, 1995 WL 306166, at *3 (Tenn. Ct. App. May 19, 1995). But there had been no other professional relationship between Appellant and her counsel prior to this case (factor 6). This factor would therefore favor a higher attorney's fees award. *Id.* ("A preexisting, ongoing professional relationship . . . can militate, in some circumstances, for a lesser fee than would be reasonable for a one-time representation for the same legal work."). There was no dispute that Appellant's counsel had not advertised his rates (factor 9) or that the fee agreement was in writing (factor 10). These factors therefore have essentially no effect on our analysis. So we turn to those factors that were in dispute, namely factors (1), (3), (4), (7), and (8).

We begin with factors (1) and (3). The trial court considered factor (1)—"the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"—to be the main issue in determining the reasonable fees to award. The trial court acknowledged the depositions taken, the relatively few witnesses that testified at trial, and the speed with which the jury returned a verdict. Based on these facts, the trial court found that there "really wasn't anything very novel or difficult about the questions," and that this was "a relatively simple case to try." As such, the trial court found the 335.9 hours billed by Appellant's primary counsel to be "totally excessive." No findings were made as to a reasonable number of hours.

In addressing factor (3)—"the fee customarily charged in the locality for similar legal services"—the trial court acknowledged that there had been affidavits submitted. The trial court found the requested rate for Appellant's primary counsel, $275.00 per hour, "a little excessive for our local rates" and instead substituted $250.00 an hour as the appropriate in-court rate. While the trial court did not expressly indicate how it arrived at this number, there was evidence in the record in the form of affidavits submitted by All Nations that support the $250.00 rate. Those affidavits also indicate $175.00 as the appropriate out-of-court billing rate.

Appellant argues that the trial court abused its discretion in considering factor (1) by not identifying excessive billing entries and instead focusing on the "common sense" argument made by All Nations that because Appellant succeeded on only one of her three original claims, she should only recover one-third of her attorney's fees request. Similarly, Appellant argues that the trial court abused its discretion in considering factor (3) by not establishing an appropriate out-of-court rate and not describing its reasoning for making

the determination of the in-court rate.

While this Court believes it to be the best practice to provide the hours and billing rates used to determine a reasonable attorney's fees award, we cannot conclude that the trial court's treatment of these factors constitutes an abuse of discretion. While the trial court continues to avoid setting a specific number for the exact number of hours that should have been expended here, the trial court does appear to credit All Nations' proof as to the customary hourly rate in the locality being lower than that charged by Appellant. The trial court also specifically stated that the number of hours expended here was excessive due to the simplicity of the case.[6] Appellant has cited no law that suggests that when a trial court reduces a requested fees award, it must do more to parse the invoices submitted in minute detail to determine the time that should properly have been expended in a given case. We likewise decline to impose that burden on the trial court in this case. Indeed, were we to hold that no attorney's fees award could be affirmed in the absence of such calculations, our holding would be akin to a backdoor acceptance of the lodestar method of computation.[7] Of course, the Tennessee Supreme Court has rejected a rule that would make such a calculation dispositive. **Wright**, 337 S.W.3d at 180 (citing **United Med. Corp.**, 703 S.W.2d at 137) (holding that an attorney's time and the customary local billing rate, while always relevant, should instead be addressed within the multi-factor test created for this purpose). In reliance on this rule, this Court has previously stated that "we need not determine on appeal the exact number of hours" spent working on a case in order to determine a reasonable fee. **In re Est. of Thompson**, No. M2011-00411-COA-R3-CV, 2012 WL 912859, at *9 (Tenn. Ct. App. Mar. 14, 2012). Thus, the trial court did not apply an incorrect standard when it considered the hours worked by Appellant's counsel in a global manner.

From the record, we can determine that Appellant's primary counsel spent roughly fifty-seven hours in court. All Nations argues that this amount is inflated, however, due to the work expended on the unsuccessful disability claim. Regardless, at the $250.00 hourly rate found by the trial court to be appropriate for the locality, this amounts to an award of $14,250.00 for counsel's in-court time. After subtracting this $14,250.00 in-court amount from the trial court's $32,000.00 attorney's fees award, $17,750.00 remains to compensate counsel's time spent outside of court. Using the $175.00 out-of-court hourly rate submitted by All Nations, whose position as to the rate the trial court appears to have credited, the $17,750.00 would cover approximately 101 hours of counsel's time outside of court. The $32,000.00 total award would thus provide for fifty-seven hours of in-court time at a rate

---

[6] The trial court's revised findings are therefore distinguishable from its initial findings, which included neither an "indication of the hourly rate that should be applied" nor an "approximation of the amount of hours[.]" **Smith**, 2020 WL 6940703, at *9.

[7] "In the lodestar calculation, the court multiplies the number of hours that the attorney has reasonably expended on the case times a reasonable or customary hourly rate." **Wright**, 337 S.W.3d at 179 (citing **United Med. Corp.**, 703 S.W.2d at 137; **In re Settlement/Guardianship of AGM**, 223 P.3d 1276, 1286 n.16 (Wash. Ct. App. 2010)).

of $250.00 and 101 hours of out-of-court time at a rate of $175.00. Together the award provides for 158 hours of time spent by Appellant's primary counsel, which is roughly 47% of his 335.9 billed hours and 33% of the total 479.4 hours billed on the case.[8]

Considering the record as a whole, we cannot conclude that the trial court's implicit determination that this was sufficient time to expend on this case is illogical or unreasonable. Appellant makes much of the high burden that plaintiffs must meet in TPPA claims. While we are sympathetic to Appellant's position, we must consider the facts of this case, rather than TPPA claims as a whole. Here, the record shows that Appellant's trial lasted no more than two days and that she called only a handful of witnesses. Moreover, the trial court characterized the claim as fairly simple and involving little more than the playing of the pastor's recorded message. Of course, Appellant takes issue with this characterization. The problem with Appellant's argument, however, is that Appellant has chosen not to include in the record on appeal a transcript from trial in this cause.

"In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (citing *J.C. Bradford & Co. v. Martin Constr. Co.,* 576 S.W.2d 586, 587 (Tenn. 1979)). Here, without the benefit of a transcript, we are unable to adequately review the proceedings to make any independent determination as to the simplicity, novelty, or difficulty that was inherent in the presentation of this case. Thus, we presume that the trial court correctly characterized the case presented to the jury as simple. And given the simplicity of this case, we cannot conclude that the trial court's finding that more hours were expended by counsel than were necessary was an abuse of discretion. Thus, both factors (1) and (3) appear to favor the trial court's reduction of the requested attorney's fees amount.

For factor (4)—"the amount involved and the results obtained"—the trial court acknowledged that Appellant was successful on her retaliatory discharge claim and considered the "relatively small" amounts obtained by the Appellant in relation to the amounts requested in the complaint. Appellant argues that the trial court abused its discretion by focusing on the amount awarded by the jury in light of the fact that Appellant's counsel was successful on her most burdensome claim and that the $15,500.00 award was nearly her full year's salary.

Factor (4) clearly requires consideration of both the amount involved *and* the results obtained. Here, Appellant obtained positive results in the form of a successful TPPA claim. All Nations contends, however, that Appellant was actually only successful on one-third of her claims as she did not prevail on her religious discrimination claim or disability claim. Appellant counters that legally she could not prevail on both a TPPA claim and another

---

[8] Of course, some of the hours billed on this case were for work performed by paralegals, who worked for a lesser hourly rate, and other attorneys, who worked for a similar or higher hourly rate.

type of claim due to the TPPA's "sole cause" standard. *See **Haynes v. Formac Stables**, **Inc.***, 463 S.W.3d 34, 37 (Tenn. 2015) (holding that the TPPA "requires an employee to show that his or her refusal to remain silent was the *sole* reason for the discharge"). We agree that a successful TPPA claim and successful disability discrimination claim appear to be at odds. We note, however, that Appellant herself chose to withdraw her religious discrimination claim prior to trial. Appellant therefore cannot be characterized as having been successful as to this claim, at least. But the invoices submitted by Appellant fail to indicate what work was expended on which claim. So it does appear that Appellant was seeking compensation for at least some work that proved unfruitful.

Moreover, although Appellant was successful on the more burdensome of her claims, she did not receive the majority of her requested damages. In particular, Appellant requested in her complaint $100,000.00 in compensatory damages and $500,000.00 in punitive damages. Appellant received a mere 2.6% of that amount from the jury. Appellant contends that it is not appropriate to consider the amount requested in the complaint, however, because she requested a lesser amount at trial. Without the benefit of a transcript, however, we have no way to confirm that assertion.

Appellant also contends that this Court should not punish Appellant for the fact that she earned a relatively low wage. According to Appellant, the total damages equal her approximate annual salary; as such, she contends that the claim was very successful. As a result, Appellant argues that strict proportionality should not be utilized because this case is quasi-civil-rights in nature as it seeks to vindicate Appellant's rights. Appellant is correct that proportionality is not dispositive in civil rights cases. *See **City of Riverside v. Rivera***, 477 U.S. 561, 581 106 S. Ct. 2686, 2697 (1986) ("In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves."); ***Lowe***, 1995 WL 306166, at *8 ("We agree with the United States Supreme Court that a rule limiting an attorney's fee to a proportion of the damages awarded would seriously undermine the purpose behind civil rights enactments.").

We decline to hold that the trial court abused its discretion in considering the small amount that Appellant recovered as part of its attorney's fees analysis. First, as All Nations points out, this is not a case that was brought under federal civil rights law. As such, while the cases cited may be persuasive, they do not govern the analysis in this case. Instead, the trial court correctly considered the amount involved and the results obtained as required by RPC 1.5. Moreover, even if we were to agree that a rule of strict proportionality should not apply to claims under the TPPA, it does not appear that the trial court applied any proportionality calculation in this case. Instead, the trial court followed the Tennessee Supreme Court's mandate that the amount involved and the results obtained are part of the constellation of facts that must be considered in determining a reasonable attorney's fees award. Tennessee is not alone in its decision to include these considerations in its analysis. Indeed, as one court explained:

a client *may* pursue any available legal remedies and spend whatever it wants in doing so. But in the context of a statute that conditions the shift of that cost to the other side on its reasonableness, the client must establish that it had proper objectives, that its choice of legal remedies was reasonably necessary to accomplish them, and that the expense of doing so was justifiably incurred *in view of the amount involved and the reasonably anticipated results.* A prudent client who must pay its own expenses will engage in a cost-benefit analysis to determine whether the anticipated benefits of pursuing legal remedies are worth the probable cost and will seek less expensive alternatives, if available. The same cost-benefit analysis governs whether legal expenses are reasonable so that they may be shifted to the adversary.

**In re Jacobs**, 324 B.R. 402, 409 (Bankr. N.D. Ga. 2005) (second emphasis added).

Here, Appellant chose to expend over $100,000.00 in attorney's fees, despite now essentially admitting that her compensatory damages were severely limited by her pre-termination income. This fact was known to Appellant at the outset of the litigation. But Appellant chose to seek an inflated amount of damages in her complaint, a choice which may have led to increased costs throughout this litigation. Moreover, Appellant has not provided us with a transcript that could aid us in evaluating the accuracy of the trial court's determination that this was a simple case in which hundreds of hours of time was not justified. Thus, while we agree with Appellant that consideration should be given to the ability of low-wage earners to vindicate their rights, we cannot conclude that the trial court abused its discretion in determining that these facts support reducing the amount of attorney's fees awarded.

The trial court's analysis of factor (7)—"the experience, reputation, and ability of the lawyer or lawyers performing the services"—was two-fold. First, the trial court acknowledged that Appellant's counsel had only been practicing law for about three years by the time this case was tried. Then, the trial court mentioned its belief that counsel's "abilities of a lawyer were certainly necessary in order for the plaintiff to be successful on her claim. I mean, I think he did a good job presenting the case to the jury." Appellant argued that the trial court's subsequent emphasis on the amount of damages awarded created an abuse of discretion.

As factor (4) requires a conjunctive analysis, so too does factor (7); an attorney's experience and ability are both relevant. Here, Appellant's attorney was inexperienced but capable. Thus, factor (7) neither favors nor disfavors Appellant. The trial court did not abuse its discretion in addressing factor (7).

Factor (8)—"whether the fee is fixed or contingent"—was not in dispute. The trial court focused on the amount in attorney's fees Appellant's counsel would have recovered

based on the settlement offer she proffered prior to trial in its discussion of the fee agreement:

> [I]t appears to me that the plaintiff was willing to settle – at least at mediation they were willing to settle this case for $40,000, which would include all of the time that the attorney had put into the case up until the mediation, which 40 percent of $40,000, is $16,000 in attorney's fees, if my math is correct, so I consider that.
>
> . . .
>
> So, you know, I say all that because . . . Factor Number 10, the Court finds that there was a fee arrangement in writing, and according to the fee arrangement . . . if it had been settled, counsel would have been awarded $16,000 in attorney's fees.

Appellant argues that the trial court abused its discretion by not considering the risk taken by her counsel in taking the burdensome TPPA claim on contingency.

It is true that generally, "[a]n attorney's fee should be greater where it is contingent than where it is fixed." *United Med. Corp.*, 703 S.W.2d at 136. However, this maxim has primarily been applied when the represented party is tasked with paying his or her own attorney's fees, rather than when a fee-shifting provision requires payment by the opposing party. *See, e.g.*, *Lowe*, 1995 WL 306166. In the former case, an attorney may be entitled to a greater fee because he or she took on the risk of receiving no fee in the event the lawsuit was unsuccessful. That risk is not particularly relevant in the latter case, when a successful party is seeking recovery from his or her opponent. Furthermore, the $32,000.00 in attorney's fees awarded by the trial court is significantly more than the $6,200.00 that Appellant's counsel would otherwise recover from the $15,500.00 jury award under the fee agreement. The trial court did not abuse its discretion in considering factor (8) to favor reduction of the fees requested in this case.

In sum, the trial court here correctly found that the majority of the factors in this case were either equal, irrelevant, or favored a reduction in the amount of attorney's fees request. Based on these factors, we cannot conclude that the trial court erred in either declining to award Appellant her full attorney's fees request or in awarding Appellant $32,000.00 in attorney's fees. To be sure, the TPPA imposes a heavy burden on plaintiffs. But here the trial court found the over $100,000.00 request excessive, relying heavily on the results obtained compared to the significantly higher amount requested, the limited experience of counsel, the lower fees charged in the area, the straightforward nature of the case, and the fee agreement between Appellant and her counsel, in reducing the award. The trial court's decision to give heavy weight to these factors in particular is well within its discretion. *See Wolf v. Wolf*, No. 86-322-II, 1987 WL 11132, at *5 (Tenn. Ct. App. May 20, 1987) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)) ("The weight to be given to the various factors is left largely to the discretion of the trial judge. The

appellate court should not interfere with the trial court's decision except when there is a clear showing that the trial court in its discretion reached the wrong conclusion, resulting in a manifest injustice if the trial court's decision is allowed to stand.").

The same is true of the trial court's decision to grant $32,000.00 in attorney's fees. Here, the same factors that support reducing the fees request also support the trial court's decision to award its designated amount. Certainly, we understand Appellant's position that a larger amount of attorney's fees should be warranted in this case. But without a transcript from the trial, Appellant deprives us of a significant tool that could be used to review the trial court's determination that $32,000.00 was sufficient compensation for the work that was necessary to obtain the result in this case. And even more importantly, we are proscribed from fine-tuning the trial court's judgment as to what we may believe is a more just result. Instead, the abuse of discretion standard of review "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below[.]" ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). Here, the decision to award Appellant more than double her total recovery in attorney's fees is one of the many acceptable choices that the trial court had before it. As such, we can find no abuse of discretion in the trial court's decision to award $32,000.00 in attorney's fees. The trial court's award of $32,000.00 in attorney's fees is therefore affirmed.

**B.**

Appellant also requests from this Court an award of her attorney's fees incurred in the first appeal and this appeal. "An award of appellate attorney's fees is a matter within this Court's sound discretion." ***Chaffin v. Ellis***, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006). "When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." ***Id.*** (citing ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)).

After Appellant was successful in the first appeal, we declined to award any attorney's fees that she incurred in the first appeal due to the number of outstanding issues created by our remand. We noted, that "[s]hould an additional appeal be necessary, however, Appellant may also request payment of the fees incurred in this appeal, if warranted." ***Smith***, 2020 WL 6940703, at *14. Following the first appeal, Appellant was successful in obtaining an over 150% increase in attorney's fees from the initial award. As such, we must conclude that she prevailed in the first appeal and is entitled to an award of the reasonable attorney's fees she incurred. But Appellant has not prevailed in this appeal, as we are leaving the trial court's second award of attorney's fees intact. As such, we exercise our discretion to deny Appellant attorney's fees incurred in this appeal. This matter is therefore remanded to the trial court for the purposes of determining Appellant's

reasonable attorney's fees incurred in the first appeal.

## IV. CONCLUSION

The Madison County Circuit Court's judgment awarding Appellant $32,000.00 in attorney's fees is affirmed. Appellant's request for attorney's fees for the first appeal is granted, and this matter is remanded to the trial court for a determination of those fees. Appellant's request for attorney's fees for this appeal is respectfully denied. Costs for this appeal are taxed one-half to Appellant, Sypriss Smith, and one-half to Appellee, All Nations Church of God, for which execution may issue if necessary.

S/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE