IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

## CLAYTON SUGG WILSON, JR. v. REBECCA LYNN BLOCKER WILSON

**Appeal from the Chancery Court for Lincoln County**
**No. 14519     J.B. Cox, Chancellor**

_____

**No. M2023-01026-COA-R3-CV**
_____

This appeal concerns the award of attorney's fees in a post-divorce dispute. Clayton Sugg Wilson, Jr. ("Father") and Rebecca Lynn Blocker Huston ("Mother") were divorced in 2017, at which time Mother was named the primary residential parent of the parties' one minor child, and Father was ordered to pay child support as well as one-half of their child's uninsured medical expenses. Four years later, Father filed a petition to modify his child support obligation, claiming that his income had decreased so much that Mother should pay him child support. Mother opposed Father's petition and filed a petition for civil contempt and to enforce the parties' permanent parenting plan, claiming that Father had repeatedly failed to pay his child support obligation and his share of their child's uncovered medical expenses. The trial court found Father in civil contempt and awarded Mother an arrearage judgment. Based on his 2020 income, the court reduced Father's monthly child support obligation. The court awarded Mother her attorney's fees in bringing the contempt action. Father then filed a motion for apportionment of Mother's attorney's fees, which the trial court denied, finding that the fees awarded to Mother were reasonable. Father appeals the trial court's denial of his motion for apportionment of fees. We affirm the trial court in all respects. Finding that Mother is entitled to recover her reasonable and necessary attorney's fees and expenses incurred on appeal under Tennessee Code Annotated § 36-5-103(c), we remand for a determination and award thereof.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Timothy P. Underwood, Pulaski, Tennessee, for the appellant, Clayton Sugg Wilson.

Courtney Lutz Creal, Nashville, Tennessee, for the appellee, Rebecca Lynn Blocker Huston.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On April 17, 2017, Mother and Father were divorced by final decree in the Chancery Court of Lincoln County. Mother and Father have one child together, who was born in 2010. Because their child was a minor at the time of the divorce, the final decree of divorce incorporated a permanent parenting plan, wherein Mother was designated as the primary residential parent and each party was granted equal parenting time.

Father is self-employed and owns and operates various businesses with his brother and father.[1] The trial court assessed Father's income at $8,812.23 per month, assessed Mother's income at $5,681.87 per month,[2] and ordered Father to pay Mother $535.00 per month in child support and to reimburse Mother for one-half of the minor child's uninsured medical expenses within thirty days of Mother providing him with the receipt.

In June 2021, Father filed a petition to modify his child support obligation, arguing that his income had decreased dramatically due to the closure of several of his family businesses. Based solely on his 2020 tax returns, Father requested that the trial court assess his gross monthly income at $1,992.70, which would require Mother to pay him $465.00 per month in child support. Mother filed an answer opposing Father's petition.

Then, in April 2022, Mother filed a petition for contempt and to enforce the permanent parenting plan. Mother claimed that Father had failed to pay his child support obligation from December 2020 through January 2022 and that he had failed to reimburse her for half of the minor child's uncovered medical expenses from September 2018 to February 2021. Mother requested that the court find Father in criminal contempt or, in the alternative, in civil contempt; however, Mother later elected to drop the criminal contempt charge and pursue civil contempt only. Mother also requested that she be awarded a judgment in the amount of the outstanding child support arrearages, totaling $7,490.00, and the outstanding medical expenses, totaling $1,081.76.

Upon filing the petition for contempt, Mother's attorneys sent discovery requests to Father to determine his income. Father responded by claiming that he had no bank accounts. Suspecting that this was not true, Mother's attorneys subpoenaed every bank in the Lincoln County area to determine the location of Father's bank accounts. These subpoenas revealed that Father had various bank accounts in his name, and that $3.6

---

[1] These family businesses include a lawn and landscaping business, a plant business, a farm, and a rental real estate business in which Father has varying degrees of ownership.

[2] Outside of her income, the record does not contain information regarding Mother's employment.

million had been deposited in these accounts. Mother then enlisted a tax attorney and certified public accountant to evaluate the $3.6 million cash flow.

The competing petitions were consolidated for trial. The day before the hearing on the petitions, Mother filed a proposed child support worksheet[3], where she asked the court to find that Father had a monthly income of $184,527.47, or $2,214,329.64 per year.[4] Mother then requested that Father's child support obligation be set at $2,100.00 per month.

On October 4, 2022, the trial court held a bench trial on the parties' petitions and heard testimony from Mother and Father. Father testified that he has no bank accounts and that, although certain accounts might show him as the sole or a co-owner of the account, he only has signatory privileges on those accounts. He also claimed that he had no knowledge regarding whether the approximately $3.6 million in deposits into the various accounts in his name were loan proceeds, income made from sales, or transactions back and forth between accounts. He further testified that his father is in charge of bookkeeping and depositing checks for all of the family business entities, and that the only money that he receives is an allowance of $350.00 per week provided by his father, unless the partnerships that he is a part of pay out other monies to him.

After the trial, Mother submitted an attorney's fee affidavit seeking $35,661.73 in attorney's fees that she had incurred from June 10, 2021 through October 4, 2022.

On November 21, 2022, the court filed its memorandum and findings from the bench trial. The court first considered Father's petition to modify his child support obligation, and Mother's alternative argument that, if his child support were to be modified, it should be modified upward. The court found that, based on Father's testimony and the money flowing through his bank accounts, it was "reasonable to question Father's credibility when dealing with his income." The court noted that Father "rests solely on the tax return as a basis for a modification of his child support payments." Likewise, Mother "did not offer any expert opinion as to what Father's income is" and "merely urge[d] the court to count up all 3.6 million dollars flowing through these various accounts and use that top figure as his income, without regard to any allowable expenses whatsoever."

Finding that neither of the parties' proposals "place[d] the Court in a position to easily determine Father's income," and that it would not be fair to "penalize Mother by taking an average of her 2020 and 2021 income[s] when Father, who is the movant, cannot show the Court an income figure for 2021," the court looked to the parties' 2020 incomes to determine whether a significant variance existed to justify a modification of Father's

---

[3] We note that Mother's proposed child support worksheet did not constitute a counter-petition to Father's petition to modify child support.

[4] At trial, Mother testified that Father's annual income was much closer to $3.6 million based on the money flowing through the bank accounts in Father's name.

child support obligation. Based on Father's tax return and testimony, the court assessed Father's 2020 income at $8,242.00 per month. The court assessed Mother's 2020 income at $6,479.00 per month.

After comparing Father's 2020 income with the income imputed to Father in the previous order, the court found that there was a "net difference in income of greater than 15%." Additionally, the court found that "recalculating the child support obligation also yielded a difference of 15% in support." Thus, the court found that modification of the support order was warranted, and decreased Father's support obligation from $593.00 per month to $299.00 per month moving forward. However, the court denied Father's request that Mother be required to pay him $465.00 per month in child support.

Regarding Mother's petition for civil contempt, the court found that Father was "clearly in civil contempt of this court" and that "Mother is entitled to a lump sum judgment in the amount of unpaid support," totaling $8,571.76. The court also found that it was "appropriate to award attorney fees to Mother for her having to bring this action in contempt" and that the attorney's fees submitted by Mother's counsel were reasonable, "especially in light of the difficulty created and maintained by Father's arcane accounting shell game."

In January 2023, Father filed a motion for apportionment of attorney's fees, requesting a reduction of Mother's attorney's fee award on the basis that he was the prevailing party in his petition to modify and that Mother's attorney's fees were unreasonable. Although Father did not dispute that Mother was the prevailing party on the contempt petition, he claimed that the attorney's fees awarded to Mother should be reduced because they contained fees related to the issue of modification, for which he was the prevailing party. Thus, Father claimed that the court should apportion the fees incurred by Mother that were attributable to her contempt petition and reduce her award of attorney's fees accordingly.

In May 2023, Mother's attorney filed a supplemental affidavit, which noted that "the outcome of this case was successful in two ways." First, the trial court found Father "in contempt for willfully violating the Court's order by failing to pay child support." Second, although the court reduced Father's monthly child support obligation, it nevertheless found that Father was "still required to pay support to Mother" even though "in his original petition, Father alleged that Mother should pay him support." The affidavit also stated that the expenses incurred to discover Father's various bank accounts were necessary to contest Father's petition to modify his support obligation and were necessary to support Mother's petition for contempt, as the accounts demonstrated both "Father's current income" and "that Father had willfully failed to pay his child support for Mother's Petition for Civil Contempt despite having the ability to pay."

On June 6, 2023, the court held a hearing on Father's motion for apportionment of attorney's fees, at which time the court considered the reasonableness of Mother's attorney's fee award. In so doing, the court looked to the time, labor, and difficulty of the matter, along with the factors set forth in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5.

On June 21, 2023, the trial court filed its memorandum and order on Father's motion for apportionment, wherein it denied Father's motion, finding that the attorney's fees and expenses requested by Mother were reasonable. The court then awarded Mother a judgment against Father in the amount of $35,661.73.

This appeal followed.

## ISSUES

Father presents two issues on appeal. Mother presents two additional issues. We consolidate and rephrase the issues presented as follows:

I.  Whether the trial court erred in its award of attorney's fees to Mother.

II.  Whether Mother is entitled to her attorney's fees on appeal.

## STANDARD OF REVIEW

A determination of attorney's fees is within the sole discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 328 (Tenn. Ct. App. 2009). Our Supreme Court has held that it will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## ANALYSIS

### I.  ATTORNEY'S FEES AT TRIAL

Father contends that the trial court erred in its award of attorney's fees to Mother.[5] Although he concedes that Mother was the prevailing party on the issue of civil contempt,

---

[5] In the section of his appellate brief dedicated to this issue, Father makes several arguments that were not raised in the trial court. He also fails to properly support several of these arguments with citations to the record. We consider these arguments waived. *See Boren v. Hill Boren PC*, No. W2021-00478-COA-

he argues that the trial court should have apportioned the legal fees between the petition for contempt and the petition to modify because he claims that "no reasonable minds could disagree that [Father] was the prevailing party on the Petition to Modify, as his child support was actually reduced after a thorough analysis by the Trial Court."

Mother counters that the trial court did not err in awarding her attorney's fees given that she was "the prevailing party on [her] Petition for Contempt" and that she was "the substantially prevailing party on Father's Petition to Modify Child Support." Mother claims that she was the prevailing party on the petition to modify because "Father was not successful in convincing the Trial Court to accept his proposed income or that Mother should be the child support obligor" and he was also "not successful in arguing for a material alteration of the legal relationship of the parties." Thus, Mother contends that she was "successful 'on [a] significant issue of litigation.'"

Under Tennessee Code Annotated § 36-5-103(c), a **prevailing party** may recover reasonable attorney's fees incurred, inter alia, in civil contempt actions and actions to enforce decrees for child support. *See* Tenn. Code Ann. § 36-5-103(c). Specifically, the statute reads:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or **civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order**, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c) (emphasis added).

The "prevailing party" determination is a fact-intensive inquiry. *Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010). A party "need not attain complete success on the merits of a lawsuit in order to prevail." *Buckley v. Carlock*, 652 S.W.3d 432, 445 (Tenn. Ct. App. 2022) (citation omitted). Instead, to achieve "prevailing party" status, a party must be awarded some judicially sanctioned relief on the merits of his or her claim. *Qualls v. Camp*, No. M2005-02822-COA-R3-CV, 2007 WL 2198334, at *6 (Tenn. Ct. App. July 23, 2007) (citations omitted); *see also Fannon*, 329 S.W.3d at 431 (Noting that a prevailing party for purposes of an award of attorney's fees is one who has succeeded on

R3-CV, 2023 WL 3375623, at *5 (Tenn. Ct. App. May 11, 2023) ("It is well-settled law, for instance, 'that an issue not raised in the trial court cannot be raised on appeal.'") (citation omitted); *see also Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Plaintiff's failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review.").

any significant issue in litigation which achieves some of the benefit sought in bringing suit) (citation omitted). The relief awarded by the court must "materially alter[] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at *7 (citations omitted).

With regard to Mother's petition for contempt, the trial court found that Father "is clearly in civil contempt of this court" and awarded Mother "a lump sum judgment in the amount of the unpaid support" along with her attorney's fees "in having to bring this action in contempt." It is clear from these findings, and undisputed by the parties, that Mother was the prevailing party on her petition for contempt.

With regard to Father's petition to modify child support, the trial court declined Father's request that his gross monthly income be set at $1,992.70 and that Mother be required to pay him $465.00 in monthly child support. Instead, the trial court imputed his gross monthly income at $8,242.00, reduced his monthly child support obligation from $535.00 to $299.00, and found that Father would remain the child support obligor. Although the court reduced Father's monthly child support obligation, Mother was able to defend the petition to modify such that Father's support obligation was not reduced to the extent that he demanded. The court also did not "materially alter" the legal relationship between the parties or "modify" Mother's behavior as Father remained the child support obligor and Mother was not made to pay Father monthly child support. We find that Mother was sufficiently successful in resisting the petition to modify as to achieve "prevailing party" status. *See C.S.C. v. Knox Cnty. Bd. of Educ.*, No. E2006-01155-COA-R3-CV, at *5 (Tenn. Ct. App. May 25, 2007) ("[T]he Plaintiffs obtained sufficiently successful results in the overall litigation to achieve 'prevailing party' status.").

Because Mother was the prevailing party on the petition for civil contempt to enforce the child support decree and she prevailed to a greater degree than Father on his petition to modify child support, in which he sought to compel Mother to pay him child support but failed, Mother is entitled to her reasonable attorney's fees under Tennessee Code Annotated § 36-5-103(c). Father contends that Mother's attorney's fee award of $35,661.73 was unreasonable,[6] because, inter alia, it would be unjust to require Father to pay "over $35,000.00 in attorney fees . . . while only getting a reduction of $19,824.00, which would be realized over the next seven years[.]" However, Father fails to make a persuasive argument.

In Tennessee, "The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts." *Wright ex*

---

[6] In support of this contention, Father again makes several arguments in his brief that were not raised in the trial court and/or are not properly supported by citations to the record in accordance with the Tennessee Rules of Appellate Procedure and the rules of this court. As noted above, we consider these arguments to be waived.

*rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citing *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986)). There is "no fixed mathematical rule" for determining what a reasonable fee is. *Id.* (citing *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002)). Accordingly, as previously stated, an award of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Id.* (citations omitted).

Trial courts may consider a number of factors in evaluating the reasonableness of an attorney's fee award, including those set forth in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5. *Ellis v. Ellis*, 621 S.W.3d 700, 708 (Tenn. Ct. App. 2019). That rule provides, in pertinent part:

(a) The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)   whether the fee agreement is in writing.

*Id.* (citing Tenn. Sup. Ct. R. 8, RPC 1.5). A trial court "may decide which factors merit greater weight under the particular circumstances of a case." *Luna L. Grp., PLLC v. Roberts*, No. M2021-00699-COA-R3-CV, 2022 WL 2961379, at *8 (Tenn. Ct. App. July 27, 2022) (quoting *Wright*, 337 S.W.3d at 186)).

In the instant case, the trial court entered a thorough memorandum and order on Father's motion for apportionment of attorney's fees, wherein it went to great lengths to identify its rationale and evaluate whether Mother's attorney's fees were reasonable.

Specifically, the court referenced the adverse credibility findings that it made against Father stating that it would be "patently inequitable" to apportion Mother's attorney's fees since "[t]he reason that the attorney fees are so high is Father's lack of candor and his lack of compliance with discovery requests." The court also noted: "Had Father ever complied with discovery requests or actually shown his true income to anyone, this process would be significantly less difficult. The responsibility for the time and effort expended by mother is his alone and he should bear the responsibility."

The court also considered the factors in Rule of Professional Conduct 1.5, finding that the attorney's fee affidavit submitted by Mother's attorney was a credible representation, that the charges in the billing statements submitted by Mother's attorneys were credible, and that the rates of Mother's attorney, and the other attorneys consulted on the matter, were in line with their level of expertise and the difficulty created by Father's conduct. The court also stated that "Father, Mr. Clay Wilson, has the same last name as his father. . . . Hence, the time and effort necessary is increased as is the novelty." The court found that Mother's attorney and other members of her firm were effectively precluded from accepting other employment during the time that they were working on the instant case, and that the fee charged by Mother's attorney "is not inconsistent with fees charged by other lawyers similarly situated." Moreover, the court noted that "[t]he amount of time involved was exacerbated by the conduct of Father and this outweighs any lack of result obtained by Mother" and that Mother's attorney was operating under a written contract for hourly fees which she had been under for years.

It is clear that the trial court underwent the proper procedure in evaluating the reasonableness of Mother's attorney's fee award and that it carefully considered the majority of the factors enumerated in Rule of Professional Conduct 1.5. For these reasons, we find no error in the court's conclusion that Mother's attorney's fees were reasonable. *See Robinson v. City of Clarksville*, 673 S.W.3d 556, 591 (Tenn. Ct. App. 2023) ("[O]ur appellate standard of review is limited in cases involving an inquiry into the reasonableness of an award of attorneys' fees, especially where the trial court has gone through the factors at RPC § 1.5 and has undergone the proper procedure to determine a reasonable fee.").

Based on all of the foregoing, we find no abuse of discretion in the trial court's award of attorney's fees to Mother.

## II.  ATTORNEY'S FEES ON APPEAL

Mother seeks to recover her attorney's fees on appeal under Tennessee Code Annotated § 27-1-122 and/or Tennessee Code Annotated § 36-5-103(c). With respect to § 27-1-122, Mother claims that she is entitled to her appellate attorney's fees because "the likelihood of Father succeeding on appeal is slim" and, thus, "Father's appeal is frivolous." Mother also claims that she is entitled to her appellate attorney's fees under Tennessee Code Annotated § 36-5-103(c) if this court finds her to be the prevailing party on appeal.

Parties to post-divorce proceedings seeking to recover appellate attorney's fees may request an award of attorney's fees under two statutes: Tennessee Code Annotated § 27-1-122 and Tennessee Code Annotated § 3-5-103(c). *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017). Parties may seek attorney's fees under either or both statutes. *Id.*

### A.

Tennessee Code Annotated § 27-1-122 provides that a court may award "just damages" against an appellant where it appears that an appeal was frivolous or taken solely for delay. *See* Tenn. Code Ann. § 27-1-122. An award of attorney's fees under § 27-1-122 rests in the appellate court's discretion. *Whalum v. Marshall*, 224 S.W.3d 169, 180 (Tenn. Ct. App. 2006). This court has held that such discretion should be "interpreted and applied strictly so as not to discourage legitimate appeals." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977).

We do not find Father's appeal to be so devoid of merit as to justify deeming his appeal frivolous. *See Knowles v. State of Tenn.*, 49 S.W.3d 330, 341 (Tenn. Ct. App. 2001) (A frivolous appeal is one that is "devoid of merit or . . . has no reasonable chance of success.") (citations omitted). Accordingly, Mother is not entitled to recover her appellate attorney's fees under Tennessee Code Annotated § 27-1-122.

### B.

However, we find that Mother is entitled to recover her reasonable and necessary attorney's fees and costs incurred on appeal pursuant to Tennessee Code Annotated § 36-5-103(c). As noted earlier, this statute provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any . . . civil contempt action or other proceeding to enforce, alter, change,

or modify any decree of . . . child support, . . . both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c).

Mother's actions in this case, including her petition for civil contempt, her request for an arrearage child support judgment, as well as her opposition to Father's petition to reduce his child support obligation, were for the purpose of protecting their child's interest. The purpose of awards under Tennessee Code Annotated § 36-5-103(c) is to protect the children's interests, not the custodial parent's legal remedies. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). Thus, requiring parents who precipitate child support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy. *Id.* "In cases involving the . . . support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005) (quoting *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989)). Although "[t]here is no absolute right to such fees, . . . their award in . . . support proceedings is familiar and almost commonplace." *Id.* (quoting *Deas*, 774 S.W.2d at 169). Further, in awarding attorney's fees pursuant to Tennessee Code Annotated 36-5-103(c), the court may consider proof of inability to pay, but such consideration will not be controlling. *Id.* (citing *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)).

Because Mother is clearly the prevailing party in this appeal, she is entitled to her appellate attorney's fees and expenses under Tennessee Code Annotated § 36-5-103(c). Accordingly, we remand this issue to the trial court to determine the amount of the fees and costs Mother is entitled to recover and to enter judgment accordingly.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Clayton Sugg Wilson.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 11 -